STATE OF NEW JERSEY, PROSECUTOR, v. ANTHONY M. THEN, BENJAMIN W. SANGOR AND THE OCEAN COUNTY COURT OF QUARTER SESSIONS, RESPONDENTS.

Argued May 2, 1934—Decided February 7, 1935.

Before Justices TRENCHARD and PERSKIE.

For the prosecutor, *Leo Robbins* (*Franklin H. Berry* and *Howard Ewart,* of counsel).

For the respondents, *Minturn & Weinberger.*

The opinion of the court was delivered by

PERSKIE, J. The writ of *certiorari* is prosecuted in this case by the state at the instance and with the assistance of the Ocean County Bar Association.

Four indictments were returned against the defendants, Anthony M. Then and Benjamin W. Sangor. The learned trial judge below returned them to the prosecutor, and in so doing described them as follows:

"I am returning to you, Mr. Prosecutor, the indictments in the Then matter. I am going to decide the motion to quash in the matter of the State of New Jersey against Anthony M. Then, the State of New Jersey against Benjamin W. Sangor, and the State of New Jersey against Anthony M. Then and Benjamin W. Sangor.

"In the State of New Jersey against Anthony M. Then, there are four indictments, and this is on motion to quash four indictments against Anthony M. Then and Benjamin W. Sangor, one indictment, presented by the grand jury for the December term, 1931 and 1932, against Anthony M. Then alleging a violation of section 15 of an act of the legislature, entitled "An act concerning trust companies," Revision of 1899, and three indictments presented by the grand jury for the April term, 1932, alleging larceny and embezzlement against Anthony M. Then and Benjamin W. Sangor, individually and jointly * * *."

The only indictment that is made to appear in the record before us is the one numbered 1493. This indictment was returned by the grand inquest for the county of Ocean (Ocean Oyer and Terminer) during the April, 1932, term.

The sixth count of this indictment charged that Anthony M. Then and Benjamin W. Sangor "unlawfully and feloniously did steal, take and carry away," &c., on October 10th, 1930, securities valued at $81,320.22, "* * * of the goods

and chattels of the Toms River Trust Company, a banking corporation of the State of New Jersey, administrator *pendente lite* of the estate of James D. Holton, deceased * * *." Mr. Then was the president of the Toms River Trust Company and Mr. Sangor was the chairman of the board of directors thereof.

On April 17th, 1933, a motion was made to withdraw the pleas of not guilty which had theretofore, on September 26th, 1932, been made by these defendants, for the purpose of making a motion to quash all the indictments. Whereupon, on the day first mentioned such a motion was made. Decision on the motion was reserved. On May 8th, 1933, the trial judge filed an opinion granting the motion. (Let it be noted that the aforesaid motion appears as having again been made on the day it was granted, viz., May 8th, 1933.)

Respondents, *in limine,* strongly contend that the quashing of the indictments is not a proper subject-matter of review; that it was a matter of judicial discretion on the part of the court below and, therefore, not reviewable. Of course, it is the well recognized and firmly established principle of the law of our state that the granting or refusing to grant a motion to quash an indictment is a matter of judicial discretion. See cases collated in the exhaustive and illuminating opinion of Mr. Justice Parker, for the Court of Errors and Appeals, in *State* v. *Riggs,* 92 *N. J. L.* 575, 576, under point 1.

But, says the prosecutor, in effect, the quashing of the indictments, under the particular facts and circumstances of the instant case, constituted an abuse of that judicial discretion (*State* v. *Potter,* 83 *N. J. L.* 428; *affirmed,* 85 *Id.* 388; *State* v. *Lynch,* 103 *Id.* 64, 67), and, therefore, is a proper subject-matter for review by this court.

Thus we come to the primary inquiry: what is meant by the words "judicial discretion," or, what is their legal significance?

In *Rex* v. *Wilkes,* 4 *Burr.* 2527, 2539, and cited by the later Chancellor Walker in his dissenting opinion, in *State* v. *Lynch, supra,* it was said:

"Lord Mansfield—God forbid that the defendant should not be allowed the benefit of every advantage he is entitled to by law."

\*      \*      \*      \*      \*      \*      \*

"But discretion, when applied to a court of justice, means sound discretion, guided by law. It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular."

See, also, section 368-2 (Discretion of Court) 31 *C. J.* 797.

And this discretion "\*   \*   \* is not reviewable here upon *certiorari,* unless, in the language of this court, in *State* v. *Vandervere,* 1 *Dutch.* 669, *it is manifest that the judicial* discretion was used 'capriciously in violation of settled legal principles of equity or of law.' 1 *Bish. Cr. Pr.* 362; *State* v. *Black, ubi supra,*" as stated in *State* v. *Potter, supra; affirmed, supra.* See, also, *State* v. *Riggs, supra,* in which the Court of Errors and Appeals refused to depart from, and in fact reaffirmed, the aforesaid rule as laid down in *State* v. *Potter, supra.* (Italics ours.)

Our courts have at all times endeavored to and have, in fact, exercised their judicial powers to the end of preserving and protecting the rights of all litigants. Our reports are replete with all class of cases, civil and criminal, particularly the latter, wherein the courts have checked and stayed the invasion of, or the assault upon, the human and property rights of all parties. And at the same time our courts have not been unmindful of the fact that society generally through the medium of its enforcing agency in criminal matters, the state, was also entitled to and did receive like attention.

It would indeed be a travesty on justice if it were otherwise. So we find that it has been held that a motion to quash an indictment, although its matter is addressed to the discretion of the court, should not be granted where an injustice may result to the state and where a refusal to do so deprives the defendant of no substantial right. *State* v. *Lehigh Valley Railroad Co.,* 90 *N. J. L.* 372, 376. And if one of the several counts of an indictment is good, *i. e.,* it will support a judgment of conviction, the motion to quash

the indictment as a whole should be denied. *State* v. *Norton,* 23 *Id.* 33; *State* v. *Startup,* 39 *Id.* 423; *Stephens* v. *State,* 53 *Id.* 245; *State* v. *Castle,* 75 *Id.* 187; *State* v. *Grover,* 104 *Id.* 10; *Henderson* v. *State,* 7 *N. J. Mis. R.* 520.

In the case of *State* v. *Tilton,* 104 *N. J. L.* 268 (at *p.* 274), Mr. Justice Kalisch said:

"Furthermore, the motion to quash an indictment is addressed to the discretion of the court, and if the motion should prevail, the state would be left without any remedy. No appeal lies from granting or refusing a motion to quash an indictment, because such motion is of a purely discretionary character. To quash the indictment in the present case would result in letting the defendant go scot free, because of the bar of the statute of limitations to the finding of a new indictment.

"On the other hand, the defendant is fully protected in his legal rights by going to trial, in which all the questions now raised can be raised in the court of first instance, and if the trial results adversely to him, he may appeal from the final judgment to the Supreme Court, and if unsuccessful there, to the Court of Errors and Appeals, but if successful in the Supreme Court, the state would be entitled to appeal to the Court of Errors and Appeals for a review, and thus have its day in the court of last resort on the question of the validity of the indictment."

In the case of *State* v. *Acton,* 9 *N. J. Mis. R.* 55 (at *pp.* 57, 58), this court held:

"It is well to add that the court is always loth to quash an indictment except on the plainest ground. *State* v. *Johnson,* 82 *N. J. L.* 330; *State* v. *Ruffu,* 8 *N. J. Mis. R.* 392; 150 *Atl. Rep.* 249. It was promptly quashed before, to permit a new indictment before the statute of limitations should have run. 149 *Id.* 340. At this writing the statute has run, and that is a most important reason to hold the indictment and leave the defendant to his demurrer, on motion in arrest of judgment. *State* v. *Tilton,* 104 *N. J. L.* 268."

It is, of course, true that in each of the cited cases, State *v.* Tilton and State *v.* Acton, the defendant sought to quash

the indictment, while in the instant case, the state is seeking to review the quashing of the indictment.

It is as was said, by Mr. Justice Kalisch, in *State* v. *Hart*, 88 *N. J. L.* 150, 151:

"* * * The common law and adopted practice in this state appears to be to allow a writ of *certiorari* upon the application of the attorney-general or prosecutor of the pleas without any special reason being assigned therefor; but where the application is made on behalf of a defendant some special reason for allowing the writ must appear. *State* v. *Zabriskie*, 43 *N. J. L.* 369; affirmed in Court of Errors and Appeals, *Ibid.* 640; *State* v. *New Jersey Jockey Club*, 52 *Id.* 493."

See, also, *State* v. *Borg,* 9 *N. J. Mis. R.* 59; and a leading English case, *Reg.* v. *Houston,* 2 *Crow. & D.* 310.

If therefore the state without any special reason, and the defendant for some special reason, may be allowed a writ of *certiorari* to review an indictment, it would appear to be but logical, proper and surely a step in the right direction to allow the writ on the application of the state, when, as here, it alleges as a special reason that the indictment was quashed "capriciously." (For a liberalization of the attitude of courts toward the commonwealth see recent case of *Commonwealth* v. *Simpson,* 310 *Pa.* 380; 165 *Atl. Rep.* 498, decided February 1st, 1933.)

And so we approach the next inquiry: Can it be said that the trial judge granted the motion to quash the indictment *"capriciously"* and *in violation of the settled principles of law applicable thereto?"* To answer this question we must, of course, first define the word "capriciously." Surely, when applied to judicial action, there cannot be ascribed to it its ordinary meaning such as "freakish," "whimsical," "changeable," "fanciful," &c. Rather should there be ascribed to it the meaning ordinarily given, in judicial matters, to the word "arbitrarily;" the latter being defined as "without fair, solid and substantial cause." "Without fair, solid and substantial cause and without reason given; without any reasonable cause; in an arbitrary manner;" or, "not governed by any

fixed rule;" "bound by no law;" "harsh and unforbearing;" "exercised according to one's own will or caprice and therefore conveying a notion of a tendency to abuse possession of power."

On these premises let us again consider the sixth count of the indictment before us. As already pointed out, it charged the defendants with the embezzlement and larceny of the securities therein enumerated, on a day certain, namely, October 10th, 1930. The learned trial judge in considering and disposing of this count said, "the court must take and does take judicial notice, of the order of the Orphans Court of Ocean county * * *." (Here the order is set out in detail.) This order, in essence, purported to authorize the sale of the securities and the acquisition of securities, equal to those sold, and which are designated as legal investments for estate and trust funds. The petition on which the order is based is not made to appear. Let it be marked that the order is dated January 30th, 1931, and was filed July 31st, 1931. It is quite obvious that there are several most persuasive and compelling circumstances which completely demonstate that the quashing of this count of the indictment was capricious, *i. e.,* arbitrary and in violation of the settled principles of law applicable thereto. Some of these circumstances are as follows: (a) The order of the Orphans Court, if admissible, was admissible as a matter of defense. The motion to quash must as a general rule be confined to the four corners of the indictment; nothing dehors the indictment, and not affecting the validity thereof (*State* v. *Hart, supra,* and *State* v. *Borg, supra*), can or should be considered. (b) The order was not made *nunc pro tunc.* (c) The statute of limitation had run.

And the learned trial judge, in disposing of this count, among other things said:

"Although technically this court should not consider facts in the determination of motions to quash an indictment, yet from the first five counts in the indictment, and from facts which the state does not deny, it is clear that the defendants were officers of the Toms River Trust Company, and that,

acting upon the authority of the order of the Orphans Court set forth above, certain securities held by the Toms River Trust Company as administrator of the estate of James D. Halton, deceased, were exchanged for other investments. Under this state of facts it is difficult to see what advantage it would be for the state to prosecute a charge of larceny, when that charge could not possibly be sustained."

Quite naturally, the trial judge was inclined to give force and effect to the order of the Orphans Court, but it is quite obvious that he unwittingly overlooked the limited scope and effect of judicial inquiry upon a motion of this character. He treated this order and the other circumstances, as detailed by him, as though they were factors which affected the validity of the indictment. They were no such factors. They were, if anything, merely such matters as might or might not have been admissible on the trial of the accused. At all events, they surely did not affect the validity of the indictment. The trial judge, therefore, was not free to consider them on a motion to quash.

We are of the opinion that, under the facts and circumstances of this case and the law applicable thereto, the quashing of this count of the indictment was clearly an abuse of the legal discretion ordinarily vested in the trial judge.

The disposition of this (sixth) count makes it unnecessary to treat of the other counts. But since there shall be a trial on this indictment, it may not be out of place to say that the other counts of the indictment also appear to sufficiently set out a violation of the criminal laws of our state, and that the words complained of, "with force and arms," in some of the counts may well be rejected as mere surplusage. *State* v. *Kern,* 51 *N. J. L.* 259; *State* v. *Cannon,* 72 *Id.* 46; *State* v. *Kuehnle,* 84 *Id.* 164; *affirmed,* 85 *Id.* 220.

It is next urged that the record is barren of any final order or judgment. Strictly speaking that is so.

But the record clearly discloses that the motion to quash was made and granted, therefore, there was a determination; that is sufficient. Read concluding paragraph, page 430, of *State* v. *Potter, supra.*

Notwithstanding that the record and opinion of the trial judge clearly indicates all four of the indictments were disposed of, nevertheless, only one indictment (No. 1493) is made to appear with the return to the writ. There is, of course, complete remedy to correct an incomplete record. Neither party, apparently, has done anything about it. We desire, however, to make clear that we rest our conclusion on the indictment which is attached to the return and thus properly before us.

The order of this court is that the determination quashing the indictment, number 1493, charging respondents, Anthony M. Then and Benjamin W. Sangor, with embezzlement and larceny, is set aside. It is remitted to the Ocean County Quarter Sessions for prompt trial.