Leaman Transportation Corporation et al., Appellants, *v.* Pennsylvania Public Utility Commission.

304

Argued March 10, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ
(RENO, J., absent).

*Harold S. Shertz,* with him *Guy K. Stewart,* for ap-
pellants, protestants.

*Frederick L. Kiger,* with him *Harry M. Showalter*
and *James H. Duff,* Attorney General, for appellee.

*James A. Geltz,* of *Prichard, Lawler, Malone & Geltz,*
and *Francis A. McClanaghan,* for intervening appellees,
Pennsylvania Petroleum Transportation Company.

OPINION BY HIRT, J., September 9, 1943:

In 1938 the Pennsylvania Public Utility Commission
issued a certificate to Pennsylvania Petroleum Trans-
portation Company, a partnership, authorizing it to
transport petroleum products by tank truck as a com-
mon carrier within the City of Philadelphia and thence
to other points within a radial area of 25 miles from

the City Hall in Philadelphia. The only other service authorized by the original order of the commission was the transportation of the same class of products from Philadelphia to the service stations of "National Garages" in Harrisburg. The partnership in 1940 applied for an amendment to its certificate seeking to enlarge its field of operation. Protests were filed by appellants and other transportation companies and hearings were held by the commission. Ultimately, after the record was remanded for the purpose, the commission made findings of fact, and upon its conclusion that "the record discloses sufficient evidence establishing a need for the proposed service for the accommodation and convenience of the public", entered a final order on March 23, 1942. The order amended the original limited certificate by granting the additional right: "To transport, as Class D carrier, oil and other petroleum products in tank trucks, between points within an airline distance of 150 miles of the Philadelphia City Hall." Thus, not only was the field of operation greatly enlarged but the limitation of radial operation was removed and transportation was permitted between any two points within the area. Appellants contend: that the conclusion of the commission and its order lack the support of essential basic findings; that the evidence is insufficient to establish a public need for the additional service; and that judicial notice, taken by the commission of an increased demand for tank-truck transportation of petroleum products in the present war emergency, cannot supply the deficiency in the proofs.

Our function on appeal is to determine whether there is error of law "or lack of evidence to support the finding, determination, or order of the commission ......" §1107 of the Public Utility Law of May 28, 1937, P. L. 1053 as amended, 66 PS 1437. On this latter phase, our sole inquiry is "whether there is substantial evidence with rational probative force in the record to support the findings of fact and the order of the com-

mission": *Mod. Trans. Co. v. Pa. Pub. Util. Com. et al.,* 139 Pa. Superior Ct. 197, 12 A. 2d 458; *Cole v. Pa. Public Utility Com.,* 146 Pa. Superior Ct. 257, 22 A. 2d 121.

The testimony in support of the application is confined to that of Roy A. Newman, one of the partners, and three dealers in petroleum products. From the testimony of Newman the commission found that about three requests for service were received weekly by the partnership from one or another of seven named refiners or dealers in petroleum products; among them, Atlantic Refining Co., Pure Oil Company and Gulf Refining Company. The requests related to transportation by the partnership from Freemansburg to Marcus Hook, Philadelphia, Royersford and Berwick; from Philadelphia or Marcus Hook to Reading, Allentown, Shamokin and Berwick. In this testimony there is some evidence of a need for additional service. Inadequacy of existing service may be evidenced in part by requests or demands of those requiring transportation of their products and testimony of such requests is relevant and competent. *Mod. Trans. Co. v. Pa. Pub. Util. Com. et al.,* supra. From the testimony of witnesses representing three dealers, the commission in substance made the following findings: "East Coast Petroleum Company of Philadelphia requires the proposed service particularly from Philadelphia to Allentown, Reading and Hughesville ...... because it had found existing facilities inadequate to meet its needs particularly during peak periods ...... from September until May when additional demand is made for the transportation of fuel oil"; that Major Petroleum Company requires service from Philadelphia to Reading and Norristown and the existing service is inadequate for the reason that some of the carriers are not permitted to serve this company because of labor union regulations; that M. J. Benson, a broker dealing in petroleum products, has need for transportation from Philadelphia to Allentown,

Bethlehem, Easton, or Lancaster about eight times monthly and to Harrisburg occasonally; that existing transportation facilities are generally satisfactory except that "they did not fulfill the required prompt service at peak periods during the winter months."

In the main the testimony supports these findings with some qualifications. Coastal Tank Lines has been making deliveries for East Coast Petroleum Company and the testimony of the president of this company is that there has never been a failure in the service but only because he has been able to give the carrier ample advance notice of his needs. He considered the existing service inadequate because it is not always available on short notice. Major Petroleum Company required delivery beyond the limits of the partnership's original certificate about fifteen times during the past year and found the existing service satisfactory in those instances although in the past it has had difficulty in obtaining service during the winter months. This shipper is limited in the number of carriers available because of labor union regulations applicable to it. It was the judgment of the president of this company that additional facilities are "desirable or necessary" in the area of its operations. M. J. Benson considered existing carrier facilities adequate except during the winter months. There were occasions when he was unable to secure immediate service at the risk of losing business and he would "like to have somebody else to fall back on occasionally."

If the testimony be scrutinized to fix the limits of the territory within which requests were made for service, or the existing facilities were found to be inadequate, it will appear that the extensive authority granted by the order of the commission is not justified either by the findings nor by the testimony upon which the findings rest. The 150 mile radius includes substantially the whole of 35 counties and parts of 5 others, of the 67 counties of the State, and the order permits transporta-

tion between any two points within that area. The testimony at best touches upon some need for additional transportation facilities from only three points of origin to other specific points in but 15 counties. As to the remaining 27 counties there is no support for the order either in the findings of fact nor anywhere in the testimony. The order to this extent is gratuitous and must be regarded as capricious or arbitrary since evidence to support it is lacking. The "desired flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force": *Consolidated Edison Co. v. National L. R. Board,* 305 U. S. 197, 59 S. Ct. 206. We have held that the extent to which there shall be competition in transportation is largely a matter of policy committed to the commission by the legislature. *John Benkart & Sons Co. v. Pa. P. U. C.,* 137 Pa. Superior Ct. 13, 7 A. 2d 588. But neither policy, nor discretion resting in the commission can justify an order without substantial evidence in support of it, establishing not only demands for additional service but a need extending throughout the area to which the order applies. It does not follow from evidence of need for additional service between specific points that existing transportation facilities are inadequate between all points within an area or that inadequacy exists in adjacent territory as to which there is no evidence. Particularly is this so where, as here, the testimony of the protestants is to the effect that they with other certified carriers are able to supply all demands for transportation.

The opinion of the commission seems to attempt to justify the scope of the order, insofar as it is not supported by specific evidence, by taking judicial notice of the necessity for additional transportation facilities in the present war emergency.[1] We have recognized that

---

[1] The opinion recites: "In addition, although there is no testimony of record in this case on the subject, it is a matter of

administrative bodies as well as courts may take judicial notice of matters of common knowledge. *Alko Express Lines v. Pa. P. U. C.*, 152 Pa. Superior Ct. 27, 30 A. 2d 440. But where the final order rests in whole or in part upon judicial notice of facts, specific findings must appear in sufficient detail to enable the court on appeal to determine whether proper limits, in supplementing the testimony by judicial knowledge, have been observed. The commission has eliminated judicial notice as a basis for its order by the failure to make any findings of fact except those, to which we have referred, based wholly upon the testimony of witnesses. In any view this case does not present a field for the exercise of judicial notice. The *Alko Express* case approved a finding based in part upon judicial notice that in the present emergency there is an increased demand for transportation facilities *generally* between Philadelphia and Pittsburgh, two prolific sources of goods for transportation. But a reference to the opinion in that case will indicate that the order was supported by the witnesses and judicial knowledge of increased demand

---

common knowledge that the serious shortage of ocean tankers and the diversion of such existing facilities by the United States Government for the War Program has compelled rail tank carriers to operate for longer distances to fulfill in part the demand for service formerly rendered by water tankers. As a result, there has been a sharp upward trend in the utilization of truck transportation for shorter hauls to supplement and release the much needed rail tank cars for hauls of greater length. The consequent very definite shortage of rail tank cars and truck tank equipment has caused shippers and motor carriers of petroleum products to have rushed to completion extra equipment to meet the demands of consumption for war production as well as for the requirements of other domestic use. We are of the opinion that the granting of this application, in addition to fulfilling the presently existing and clearly established need for the transportation above discussed, will also serve to ease the difficult petroleum distribution situation in the present war effort by providing additional facilities for a greater flexibility of transportation of critical war materials."

merely gave added weight to their testimony. It does not follow from that case that the commission may take judicial notice of inadequacy of existing facilities for the transportation of a specific commodity. *Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U. S. 292, 57 S. Ct. 724. Particularly is this true of fuel oil and gasoline which, as is generally known, are the subject of rationing, decreasing the supply and, it would seem, the need for transportation to that extent. In any view, because of the factors involved, the effect of the present emergency upon transportation of petroleum products must be established by proof and is not a proper subject for judicial notice.

Since there is a lack of substantial evidence with rational and sustaining probative force, the order must be reversed. We are not convinced however that there is an entire lack of evidence indicating a need for additional transportation between some points within the area.

Order reversed and record remanded to the commission for further proceedings not inconsistent with this opinion.

RHODES, J. dissents.

RENO, J. took no part in the consideration or decision of this case.