No. 16,808.

MacArthur, Manager of Safety and Excise
v. Martelli.
(255 P. [2d] 969)

Decided April 6, 1953.

Mr. Leonard M. Campbell, Mr. Burton Crager, Mr.
Mitchel B. Johns, for plaintiff in error.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. ROBERT W. BENNETT, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

Martelli made application to Manager of Safety and Excise MacArthur, as licensing authority, for permission to transfer his hotel and restaurant liquor license from 3015 East Colfax Avenue to 3018 East Colfax Avenue, Denver. Hearing on the application was held before the Manager, whereat witnesses were heard and petitions and letters received, both for and against granting the application. Thereafter the Manager denied the application, advising Martelli that: "After a full study of all the evidence adduced at said hearing in addition to a study of the petitions, it is my opinion that the application should be and is hereby denied." Thereupon Martelli filed his complaint in the nature of certiorari in the district court, alleging that the Manager's denial of the application was an abuse of his discretion, capricious and arbitrary. Upon review, the court entered findings that the Manager's denial of the application was without good cause, in abuse of discretion, capricious and arbitrary, and gave judgment ordering the issuance of a permit for change of applicant's license location, as prayed for. Said judgment is before us for review.

Our statute, Chapter 89, Article 2, section 17(h), '35 C.S.A., provides that a licensee may move his location to any other place in the same city, but it shall be unlawful to sell at any such place until permission so to do shall be granted by all licensing authorities, and that, "In permitting such change of location such licensing authorities shall consider the reasonable requirements of the neighborhood to which the applicant seeks to change his location, the desires of the inhabitants as

evidenced by petitions, remonstrances or otherwise and all reasonable restrictions which are or may be placed upon the new district or districts by the council of the city, * * *." In other words, the requirements for change of license location are the same as those for obtaining a license, and the duties and authority of the Manager are the same. It is urged in behalf of Martelli that the holder of a license is entitled to more favorable consideration than an applicant for a new license and that the same is true of an applicant for change of location. We cannot so adjudge. We have repeatedly held that it was the intention of the legislature to vest a wide discretion in local licensing authorities. In the case of *Board of County Commissioners v. Buckley,* 121 Colo. 108, 213 P. (2d) 608, involving an application for renewal of a license, we stated: "The defendant board was not bound by any prior action of any licensing authority with relation to the facts pertaining to the issuance of any license for former years, but was called upon to exercise its own discretion as of the date of the new application. Conceivably the licensing authority passing upon the new application, in the exercise of its discretion, might with propriety reject an application which a former board, upon the same facts, had approved, and in so doing the board would not, of necessity, be guilty of an abuse of discretion, or an arbitrary and capricious exercise thereof. There is no vested right in a licensee to continue in the liquor business beyond the expiration of the date of the license under which he operates." Equally, there is no vested right in a licensee to move the location of his license, and, upon application so to do, the Manager may, and should, consider the same as in case of application for a new license. The statute requires it be given like consideration.

The following facts are supported by evidence before the Manager: In its old location, plaintiff's place of business adjoined on either side another business building. The new location is on the opposite side of a wide

and very busy thoroughfare. Its site is now occupied by a dwelling house, with other dwelling houses built close together in line from it westerly to the street intersection. Adjoining the corner house farther away from plaintiff's site, and extending from the house to the sidewalk line, a business room has been constructed, occupied by a plumbing establishment. The new site adjoins and is on the west side of an alley intersecting the block. Across from the alley is a vacant lot, used as a car sales lot. Otherwise than the plumbing shop and car lot, the entire block, on its four sides, is occupied by dwelling houses built with little intervening space. In the adjoining block to the east, on Colfax Avenue, is a restaurant with a hotel and restaurant license, as here sought, and several other licensed liquor dispensing places are in the neighborhood. Two and a half blocks to the west and across the street are the grounds of a large city high school.

Applicant's testimony discloses difficulties with reference to his lease on his present premises and the economic advantage of the removal and enlarging of his business premises. As we said in *MacArthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934, "Such evidence shows the need of the applicant for a license, but not, convincingly, the requirement of the community for it." The first of applicant's witnesses testified that he was in favor of the transfer because, "these is good men to operate a good place;" that it would improve property values, and applicant has been there so long he is entitled to it. Another, that "they got an old building and it is a shame for that part of town and he is trying to put up a nice clean building there and I think it would be a nice clean improvement," and would increase property values. A third, that he is in favor of the transfer if applicant puts up a building which is a credit to the neighborhood. The fourth, that he favors the transfer and feels that property values in the neighborhood would probably increase and he is in favor of the enhancement of busi-

ness in any location that is zoned for business. None testified as to the requirements of the neighborhood or desires of other inhabitants. Applicant's fifth witness had been employed to circulate a petition, ring doorbells, and ask persons if they had any objection, and if they would sign. Some were not at home and she did not go back. She covered approximately a radius of three blocks from the proposed location in all directions. She testified that she obtained over 250 signatures, but she did not keep a record of those who refused to sign; that it might have been 300 and might possibly have been 350 who refused; that her circulation of the petition was not an attempt to get the trend, and that she didn't know whether the concensus of opinion was for the move or against it, except as she rang the doorbells.

In behalf of protestants, an equal number of witnesses testified as to objections by themselves and other inhabitants in the neighborhood. Among the grounds of objection stated were: The greater prominence of the new liquor selling place; reduced property values; detriment to the character of a residential neighborhood; the further limiting of parking facilities on that side of Colfax and the intersecting streets, and the inevitably increased parking difficulties on side streets and in the alley adjacent to the new location, which necessarily was used by several of the residents in getting to and from their garages. There was considerable testimony as to the large number of school children who came down the alley adjacent to the new location, both to and from school and on shopping errands for their parents, and in the evening when they went to the Bluebird Theater nearby on Colfax Avenue. There was further objection that the liquor dispensing building would be adjacent to the several residence properties, either directly or across the alley, and that it would cause increase of noise at night, to the annoyance of residents, by the coming and going of people more or less intoxicated — as had happened from the existing location — and bring about

the use of the alley for toilet purposes by men leaving the drinking place. The number of petitioners appearing from the files who favored issuance of the license was 451, and those protesting 474.

As we have repeatedly ruled in the matter of issuing licenses, all reasonable doubt must be resolved in favor of the licensing authority. The showing of other nearby liquor outlets by a plat admitted in evidence and the close proximity of another place with a hotel and restaurant license would indicate that the Manager might have discretion as to the reasonable requirements of the neighborhood. The number of protesting inhabitants and the reasons given for their protests required determination of the issue of the desires of the inhabitants. The determination as made by the Manager on the basis of such evidence does not appear to have been arbitrary or capricious and there is no evidence that he failed to give candid and honest consideration in the exercise of discretion.

Accordingly, we must, and do, hold that the decision of the Manager was not arbitrary.

The judgment of the trial court is reversed.

MR. JUSTICE HOLLAND concurs in the result.