## No. 18,131.

EDWARD O. GEER, AS MANAGER OF SAFETY AND EXCISE OF THE CITY AND COUNTY OF DENVER *v.* ANGELO STATHOPULOS.

(309 P. [2d] 606)

Decided April 1, 1957.   Rehearing denied April 29, 1957.

Mr. JOHN C. BANKS, City Attorney, Mr. TY R. WILLIAMS, Assistant, for plaintiff in error.

Mr. WALTER F. SCHERER, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

STATHOPULOS applied for a hotel and restaurant liquor license pursuant to the Liquor Code of 1935 (C.R.S. '53, 75-2-1 et seq.) The application was, after hearing, denied by the Manager of Safety and Excise, the licensing authority of the City and County of Denver. These parties will be respectively referred to in this opinion as the applicant and the Manager.

In denying the application, the Manager held:

"1. In my opinion, you failed to establish *a prima facie case* as to the statutory need for an additional liquor outlet to serve the reasonable requirements of this neighborhood.

"2. In arriving at this decision, due consideration was given to the 303 written signatures in favor of the issuance of this license. However, in my judgment, more weight is given to the oral testimony produced by persons appearing as witnesses than to mute signatures on petitions. *None of the persons appearing as witnesses could testify that there was a need for this additional outlet.* The evidence taken in its most favorable light established nothing more than it would be desirable for periodic events at the Coliseum.

"3. There are four Hotel and Restaurant Liquor Outlets in this neighborhood *which adequately serve the reasonable requirements of the residents thereof.*" (Emphasis supplied.)

After the denial of this application, the applicant sought relief under Rule 106 (a) (4) R.C.P. Colo. (a proceeding in the nature of certiorari) against the Manager's decision, and obtained an order from the District Court of the City and County of Denver requiring the Manager to show cause why such license should not be granted. In compliance with the order to show cause, the Manager certified the record and transcript of the proceedings before him, and sought thereby to be justified in his denial of the application for such license.

On the day appointed for trial of the cause the same was assigned to the Hon. Edward J. Keating, and the

Manager thereupon filed his motion to disqualify, charging said Judge with being not qualified to sit as the trial judge in the matter for the reason that he was prejudiced in favor of the applicant and against the Manager in the case under consideration and in all similar cases. This motion to disqualify was supported by an affidavit which stated that said Judge had "expressed personal opinions, both in chambers and in open court, to the effect that the handling and administration of liquor licenses in and for the City and County of Denver has been, and is a rotten, stinking mess and that in his opinion, the entire matter should be investigated by a grand jury." The affidavit also stated that the Judge told the attorney for the Manager in open court "that he, said Judge, intends to reverse the decisions of the Manager in every case where he has the opportunity, and that he will keep this counsel busy appealing his decisions to the Supreme Court until a grand jury or someone else does something to straighten this matter out."

This motion to disqualify was denied, the court in part saying, "For the purposes of the record this court wishes to let it be known that those portions of the affidavit as submitted by able counsel for the City Attorney's Office as to statements made by this court, were made upon the evidence submitted in cases heretofore tried by this court. This court does not feel that he is prejudiced in this matter in any way, manner, shape or form; that he knows none of the parties involved herein, and that this motion is denied."

Apparently the Manager was satisfied at the hearing before him that all the requirements of the law relating to qualifications of applicants, and conditions, for the license were met, excepting the proof of the reasonable needs of the neighborhood. What was the evidence bearing on this matter of the reasonable requirements of the neighborhood?

From the testimony and the exhibits it appears that

a number of persons in the area were consulted regarding their views on the question of the issuance of the license. Among the persons thus contacted by the applicant, none registered any objection. Many of them, 303 in number, representing 87.3% of those approached, signed the applicant's petition in support of the issuance of the license. Of the 44 who refused to sign for various reasons (such as being employed by the City), only 15 said they objected to the issuance of a license, and this on the sole ground that they were opposed to "liquor in any shape or form."

The area involved is primarily industrial in character, but it contains the homes of approximately 500 people who live within its confines. In this area are the Coliseum and the Denver Stock Yards. The business of the applicant is located on the Northeast side of East 46th Avenue, directly across from the Coliseum. East 46th Avenue is a very busy thoroughfare in Denver; each day some twenty thousand cars pass the applicant's location.

There was testimony that this additional outlet was needed in order to serve patrons attending entertainment at the Coliseum and working in the area; that the applicant intended to operate a first-class restaurant capable of accommodating about 160 persons at one time, and providing for parking facilities for 50 cars; that a restaurant such as he intended to operate, was necessary to take care of the wants of the public traversing East 46th Avenue.

Because daily between 15 and 20 persons came and left the restaurant due to inability to obtain liquor with their meals, the present owner of the business (who has given an option to the applicant to buy the establishment) believes there is a need for the license sought by the applicant. The business is presently licensed to sell 3.2 beer.

Introduced in evidence was a map, to which was attached a statement of outlets in the area, obtained

from the Manager's records. These records revealed that there were four places licensed in the neighborhood to serve malt, vinous and spirituous liquors under hotel and restaurant licenses.

There were no remonstrances signed by residents of the neighborhood protesting the issuance of a license. No person appeared at the hearing in the Manager's office to oppose the application, excepting a clergyman who did not live in the area, and as to his testimony, the Manager held that his statement that the churches of Colorado were against the issuance of the license "had no evidentiary weight at all."

Based upon the record before it the trial court held that the denial of the application "was and is clearly without 'good cause,'" and directed the Manager to issue the license requested by the applicant. The Manager seeks reversal of this judgment.

It has been urged in the Manager's brief that the trial judge should have disqualified himself on the showing made by the motion and affidavit, and that his failure to do so requires reversal.

Every litigant is entitled to a fair and impartial trial. A fair and impartial trial, the very desideratum of the administration of justice, is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry, and renders judgment only after trial. The antithesis of a fair and impartial trial is prejudgment by a court. A tendency to prejudge, or a prejudgment of a particular controversy, or of a class or character of cases only sucks the administration of justice down into the eddy of disrepute.

Had this been a trial de novo before Judge Keating, it would have been our duty to review his ruling on the "motion to disqualify." While we do not condone prejudgment of any controversy, including a case of the character now before us, we deem it unnecessary to determine whether this case should be reversed on the

ground of error for failure of the trial judge to disqualify himself.

■ The review of the Manager's action, denying the application for a liquor license, came before the trial judge on a printed record — the identical record before this court. Hence, there is no difference, as to what is being reviewed, between the trial court and this court. "In other words, this court 'will examine the record as though the matter had never been heard or examined by the trial court, and will exercise its discretion in the matter as a trial court is authorized to do in such matters.'" *Boise Flying Service v. General Motors Accept. Corp.,* 55 Ida. 5, 36 P. (2d) 813. Thus, the question initially forming the subject of this controversy will be fairly and impartially reviewed here, and there is no need for this court to go into the question of the disqualification of the trial judge.

We are not concerned with the rule ordinarily applicable to writs of error before this court — that we must approach the facts of a case by constantly keeping in mind the exclusive vantage point of the trial judge in that he was able in the trial to use his eyes, ears and intelligence to discern wherein was truth, and wherein credit and weight should be given to the testimony of witnesses. Such is not required in this case. The rule is well stated in *Miller v. Taylor,* 6 Colo. 41, as follows: "The testimony in this case was taken before a referee, and the rule that a decree or judgment will not be disturbed unless manifestly against the weight of evidence does not obtain.

"The opportunity which the jury, or the nisi prius court, when the trial is to the court, has to judge of the credibility of witnesses by their appearance on the stand and their general manner of testifying supplies the reason for the rule.

"Where the testimony of witnesses is taken before a master or referee no such opportunity is afforded, and the rule ceases with the reason for it.

"It becomes our duty in such case to examine the entire record, sift and weigh all the evidence with a view to a just determination, uninfluenced by the proposition that the court below had superior opportunities to judge of the credibility of witnesses." See *Jackson v. Allen,* 4 Colo. 263; *Conklin v. Shaw,* 67 Colo. 169; *Gerard v. Costen,* 68 Colo. 542; *Van de Vegt v. Commissioners,* 98 Colo. 161, 55 P. (2d) 703, involving the issuance of a liquor license.

In view of the evidence before the Manager, was his refusal to grant the license arbitrary and without good cause? If it was, the trial court had the duty of ordering the license to issue; if not, the Manager's action in the premises must be sustained and the trial court held to have ruled erroneously. C.R.S. '53, 75-2-8 (2). In order properly to resolve the problem, the court must determine "whether or not the decision of the licensing authority was supported by competent evidence." *Mac-Arthur v. Sanzalone,* 123 Colo. 166, 225 P. (2d) 1044. "The question now before us is not as to whether there was any evidence to support the decision of the trial court, but rather whether there was any evidence to support the decision of the licensing authority, or whether he acted arbitrarily and capriciously." *Mac-Arthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934.

The evidence, undisputed and not countered, except by the proof of the existence of four like licenses in the area (of which we will have more to say hereinafter), establishes a prima facie case for the granting of the application. To hold otherwise, as the Manager did, constitutes arbitrary action. "Capricious or arbitrary exercise of discretion by an administrative board can arise in only three ways, namely: * * * (c) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action is based on conclusions from the evidence such that reasonable men fairly and honestly considering the evidence must reach contrary conclusions." *Van de Vegt v.*

*Commissioners, supra; Page v. Blunt,* 126 Colo. 324, 248 P. (2d) 1074.

■ Should the fact that four licenses have been issued in the area, in and of itself, remove the stigma of caprice and unreasonableness from the action of the Manager in denying applicant's petition? We think not. In so holding, we recognize that the number of licenses in an area may be sufficient to warrant the Manager in denying the issuance of an additional license. But such is not the case before us. Four licenses in the area, without more in the record, prompts the court to regard the denial of the license involved as an arbitrary exercise of the Manager's discretion.

Now, the Manager may have information, either from his records or from special knowledge, as to why four licenses are enough to meet all needs in the area in question. If so, the record and his findings and order fail to disclose such information. Lacking such information, we shall not speculate as to its existence and as to its quantum or weight in order to uphold the Manager.

"It has been held that administrative notice is much wider than judicial notice, but it has also been held that *an administrative body may not resort to judicial notice as a means of establishing a material fact that is not available to the courts . . .*" 73 C.J.S. 444, §123.

■ When a court is called upon to review the action of an administrative agency, it should be placed in the same position as such agency. If the administrative agency has knowledge of some fact and acts upon such knowledge, the agency should see to it that what it knows becomes part of the record in order to permit the reviewing court to evaluate the matter so known. Only then can the court be in the same position as the agency in a consideration of the problem successively confronting agency and court. *People v. Walsh,* 244 N.Y. 280, 155 N.E. 575. The point of the matter is so ably stated by Judge Cardozo in the cited case: "But the power of the board to do justice informally and prompt-

ly is not limited to cases where witnesses have been heard. Without any witnesses at all, *it may act of its own knowledge,* for, as constituted by the statute * * *, it is made up of men with special qualifications of training and experience. In that event, however, it must set forth in its return the *facts known to its members, but not otherwise disclosed. To characterize the situation as a hardship without more does not tend in any substantial degree to enlighten a reviewing court.* There must be disclosure of the facts from which hardship is inferred.

"*We find neither evidence at the hearing, nor any statement, equivalent to evidence,* by the board in its return, that this land, if not occupied by a garage, is incapable of application to a profitable use." (Emphasis supplied.)

With his usual logic and eloquence Judge Cardozo concludes: "We thwart the scheme of the statute if we uphold a resolution for the concession of a privilege *with neither evidence at the hearing, nor allegations in the answer to be accepted as a substitute for evidence. The Legislature has said that there shall be a review by certiorari.* * * * *Such review becomes impossible if without supporting evidence or equivalent averment the mere conclusion of hardship is sufficient and indeed decisive.* There has been confided to the board a delicate jurisdiction and one easily abused. * * * Nothing is before use to justify or even suggest a doubt of the good faith and sincerity with which the power has been exercised. *At the same time judicial review would be reduced to an empty form if the requirement were relaxed that in the return of the proceedings the hardship and its occasion must be exhibited fully and at large."* (Emphasis supplied.)

We must not overlook the fact that the Liquor Code of 1935 provides for judicial review of the action of the licensing agency by "a writ of certiorari or other proper method." The court "shall determine whether said

refusal [to license] was arbitrary and without good cause, and if so finding, the said court shall order the state and local licensing authorities to issue said license." C.R.S. '53, 75-1-7. Such determination cannot be made unless the Manager discloses the bases for his denial. If the court fails to require disclosure, it cannot properly perform its function of review, and thereby the statute is circumvented.

There is coincidence in our thought and what was said in *Leaman Transp. Corp. v. Penn. Public Utilities Commission,* 153 Pa. Super. 303, 33 A. (2d) 721: "But where the final order rests in whole or in part upon judicial notice of facts, specific findings must appear in sufficient detail to enable the court on appeal to determine whether proper limits, in supplementing the testimony by judicial knowledge, have been observed."

Whether the facts administratively known be matter appearing in the records of the agency, or part of the record in the particular case pending before the agency, or is properly judicially cognizable by a court, the administrative body should make known by a clear statement in the record of the hearing the matters it has considered by virtue of administrative notice. If such material forms the basis of its findings and determination, the agency should so state in terms which will afford the reviewing court the opportunity to exercise its function of scanning the record for the purpose of ascertaining whether the agency acted arbitrarily or capriciously.

We have gone to some lengths in discussing the administrative agency aspects of this case. Such was done for a purpose. Administrative law is becoming an ever-expanding phase of the law. Its mushrooming growth has evolved new problems.

Modern conditions, creating great complexities in our way of life, have shifted inquiry from the question of the desirability of administrative law to that of control. Emphasis must be placed upon safeguards necessary to

insure against abuses which may result from an unfettered exercise of power.

█ The informality of hearings before such agencies, the relaxation of rules of evidence, long recognized as rules of reason by the common law, the despatch with which cases are disposed of, spell out the inherent dangers of administrative hearings. Desirable as administrative practise may have become, courts should be ever alert to safeguard the rights and privileges of parties who must go before such agencies from the risks of abuse which inhere in the system.

The judgment is affirmed.

MR JUSTICE KNAUSS and MR. JUSTICE HALL dissent.

MR. JUSTICE KNAUSS dissenting:

I dissent. My brethren who constitute the majority apparently go on the assumption that the burden is upon the licensing authority to show why the applicant should not be granted a license to dispense intoxicating liquors at retail. This presupposes that every citizen is entitled to apply for a license and that the public official in charge of such matters must peradventure show why the applicant is NOT entitled to that which he seeks. In my opinion this has never been the law in this state. The granting or denial of an application for a liquor license is not the trial of a law suit. It is a request made to the local government for a privilege to do that which since the earliest days of this state has been within the sound discretion of the authority without whose consent no person, firm or corporation may dispense intoxicating liquors. By the majority opinion the court becomes the licensing authority. To say that the Manager of Safety in the instant case acted capriciously and arbitrarily is nothing more than the substitution of the ideas of the judges of this court for those of the individual who by law is charged with this function.

This case is one of four cases brought to this court

from the Denver District Court by the Manager, who was ordered by the trial judge in the instant case to issue the licenses applied for, together with another which was decided by a District Judge who is now a member of this court. None of the other cases have been decided. This case was advanced on the docket of this court on application of the defendant in error, because he holds an option on the property where he desires to establish a restaurant and operate under a "three-way" license, which option he will exercise if he is granted a license.

No person may with impunity engage in the business of selling intoxicating liquor without compliance with the license law. "No person has a vested right to have a license for the sale of intoxicating liquor issued to him." 48 C.J.S. 134, p. 241.

The burden of establishing the facts necessary to authorize the granting of a license is not upon the licensing authority but upon the applicant.

In the exercise of his discretion the licensing authority may consider all circumstances known to him from whatever source the knowledge may have been derived. *Lord v. Delaware Liq. Comm.* (Del.) 2 Terry 154, 17 Atl. 2d 230.

A reviewing court may not substitute its judgment for that of the licensing authority. 48 C.J.S. p. 261.

The leading case in this state is *MacArthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934. There this court said: "Such evidence shows the need of the applicant for a license, but not, convincingly, the requirement of the community for it." There, as here, the applicant held a "two-way license," that is, a license to dispense beer and wine. He desired to sell spirituous liquors. This court said: "Of a certainty, the evidence disclosed by the record contains no showing that the necessity for spirituous liquors with meals [as in the present case] was so urgent and immediate in that community that all reasonable men must agree that it required the service

of such liquors at a location across the street from an eating place having such license * * *. All reasonable doubt must be resolved in favor of the licensing authority." The license was refused in the Presto case and this decision has been followed in all subsequent cases in this court. In *Board of County Commissioners v. Buckley,* 121 Colo. 109, 213 P. (2d) 608, Mr. Justice Moore, speaking for this court, said: "We cannot say that reasonable men must of necessity conclude that the stated grounds of rejection are without merit. There is room for an honest difference of opinion among board members, equally conscientious in the discharge of their duty, as to whether the conditions existing would warrant a rejection of the application." In the instant case there is no claim that the Manager of Safety was anything but "conscientious in the discharge of his duty." This court may not substitute its opinion for that of the Manager of Safety for "there is room for an honest difference of opinion" among equally conscientious men in the "discharge of their duty."

*MacArthur v. Presto* was approved in *MacArthur v. Bucklen,* 123 Colo. 41, 225 P. (2d) 58; *MacArthur v. Sanzalone,* 123 Colo. 166, 225 P. (2d) 1044; *MacArthur v. Bishop,* 123 Colo. 452, 230 P. (2d) 589; *MacArthur v. Martelli,* 127 Colo. 308, 255 P. (2d) 969, and *Geer v. Susman,* 134 Colo. 6, 298 P. (2d) 948.

The court will not weigh the evidence, but will consider it only to ascertain whether or not there is any legal evidence to support the ruling. 48 C.J.S. 270.

*MacArthur v. Martelli, supra,* was a case where Martelli, holding a liquor license, was having some trouble over his lease on the premises in which he conducted his business, and desired to move directly across Colfax Avenue to another location. The district court directed the issuance of the license to Martelli, and this court reversed the judgment. In the Martelli case the number of outlets in that section of the city would not be increased by permitting applicant to move across the

street. There, this court said again: "As we have repeatedly ruled in the matter of issuing licenses, all reasonable doubt must be resolved in favor of the licensing authority."

We cannot, in view of our holdings, surmise or conjecture that the existing outlets in the vicinity of the applicant's premises, which he desires to purchase IF he gets a license, are of doubtful value, or do not render efficient and satisfactory service. Applicant does not now own or have a lease on the premises to which he says he will attract business. Nothing of the sort appears in this record, and as we are not the licensing authority, we should not indulge in tenuous inferences or exsufflate surmises about the other institutions in the neighborhood or the character of such establishments. In the Martelli case applicant advances the "economic advantage of the removal and enlarging of his business premises." There this court said [citing the Presto case] with reference to evidence adduced by applicant: "Such evidence shows the need of the applicant for a license but not, convincingly the requirements of the community for it."

The facts in *MacArthur v. Bishop, supra,* were identical with the facts in the instant case, except that there were a greater number of outlets within a radius of six blocks of the premises where Bishop had a bona fide restaurant and held a "two-way" license. He desired a "three-way" license, which was refused by the Manager of Safety, the district court on review directed the issuance of the requested license. The case was reversed in this court with Mr. Justice Holland dissenting. It was there announced: "The statute contains no requirement of formal findings, no jurisdictional or quasi-jurisdictional determination or finding was required, and no specific findings were requested and refused. We think none were here necessary."

To justify reversal of the action of a licensing authority it must affirmatively appear that the conduct of the

official making the decision was arbitrary or capricious, essentially synonymous terms. To come within the terms arbitrary and capricious the official charged with the duty must be shown to have acted "in violation of settled legal principles." *State v. Davidson,* 116 N.J.L. 325, 184 A. 330; *State v. Then,* 114 N.J.L. 413, 177 A. 87. In the light of the several Colorado decisions herein cited, how can it be said that Plaintiff in Error acted contrary to the "settled legal principles" announced by this court, when he denied petitioner's application for a license? In my opinion the Manager of Safety acted in accordance with the law as recorded in the Colorado cases, and exercised the discretion vested in him to act in the interest of the public. Counsel for Plaintiff in Error, in my humble opinion, had a perfect right to rely on the decisions of this court. Our pronouncements in cases of this kind should not be lightly brushed aside and held for naught, and I cannot for one moment admit that because the Manager refused the license a "stigma" attached to him, as stated in the majority opinion.

MR. JUSTICE HALL dissenting:

I dissent. Plaintiff in error, herein referred to as Geer or Manager, by writ of error seeks to have reviewed and reversed a purported judgment of the trial court, which judgment directed Geer:

"* * * forthwith to issue to petitioner the license applied for."

Rule 97 of the Rules of Civil Procedure for Courts of Record in Colorado, adopted by *this court* effective now and since April 6, 1941, provides:

"Upon motion a judge *shall be disqualified* in an action, if he is *interested* or *prejudiced* or is related * * * such motion shall be supported by affidavit." (Emphasis supplied.)

Promptly after the case was assigned to the trial judge for determination, counsel for Geer, in conformity with

said Rule 97, filed his motion to disqualify the trial judge for the alleged reason that he was prejudiced in favor of petitioner and against Geer in this and all similar cases. This motion was supported by affidavit made by one of the attorneys for Geer and contains the following:

"That in connection with said hearings, the said Honorable Judge Keating has expressed personal opinions, both in chambers and in open Court, to the effect that the handling and administration of liquor licenses in and for the City and County of Denver has been, and is a rotten, stinking mess and that in his opinion, the entire matter should be investigated by a grand jury.

"That said Judge has also stated in open Court to this Affiant as counsel for the respondent herein that he, said Judge, intends to reverse the decisions of the Manager (Geer) in every case where he has the opportunity, and that he will keep this counsel busy appealing his decisions to the Supreme Court until a grand jury or someone else does something to straighten this matter out."

The trial Judge on August 7, 1956, denied this motion and in so doing stated:

"For the purposes of the record this Court wishes to let it be known that those portions of the affidavit as submitted by able counsel for the City Attorneys Office as to statements made by this Court, were made upon evidence submitted in cases heretofore tried by this Court. This Court does not feel that he is prejudiced in this matter in any way, manner, shape or form; that he knows none of the parties involved herein, and that this motion is denied. Gentlemen, kindly proceed."

Thereupon, and on the same day, August 7, 1956, the parties presented the matter to the Court for determination. On August 8, 1956, the trial judge entered his findings and the purported judgment set forth above.

The trial judge erroneously denied the motion to disqualify. By his threat as set forth in the affidavit, and

which the trial judge admits making, it is manifest that he had effectively divested himself of the essential judicial qualifications and attributes necessary and requisite to the entry by him of *any judgment in any case involving* "decisions of the manager."

A decision or judgment of a court presupposes the giving of honest and unbiased thought and consideration to matters presented in an orderly manner, at a trial or hearing where the contentions of the parties are presented and *following which* their rights and duties are fairly adjudicated. The trial judge herein having decided all cases of the Manager prior to filing or presentation thereof has rendered himself judicially impotent in such cases. His post-hearing pronouncement after trial of this case, viewed in the light of his pre-hearing prediction, falls far short of the stature and dignity of a judgment, and being devoid of the essential ingredients of unprejudiced thought, consideration and reasoning is unworthy of review.

The so-called trial herein was nothing short of a mockery. The parties have never had their day in court, the rights of these litigants having been determined prior to their appearance. Due process has been cast aside to make room for bias and prejudice. The end result of these proceedings, being but a malignant travesty on the administration of justice, has none of the essential elements of a *judgment* as contemplated by the constitutions and laws of the state of Colorado and the United States of America.

The question as to whether Geer must or should issue a liquor license to Stathopulos is of small moment. A more important question is the integrity of our judicial processes and sustaining public confidence therein.

It has been well said:

"It is important, not only that this case be tried by a fair and impartial judge, but also that this Court shall see to it that no suspicion attach to the course of judicial proceeding; in order that it may be made apparent,

in so far as possible, to the community that the judicial proceedings are impartial and beyond reproach; this to the end that the confidence in our judicial system may be sustained." *State v. Freeman* (Okla.) 229 Pac. 296.

The action of the trial court herein has aroused my suspicion and shaken my confidence, and as a consequence thereof I have examined the records of this court and find, and take judicial notice of the fact, that since the trial Judge unburdened himself as disclosed by the affidavit set forth above, he has decided four other cases involving the issuance of liquor licenses by the manager, and which are presently pending before this court on error. In each of these cases, true to his promise, he "reversed the decisions of Geer." Hence it would appear that most, if not all, of Geer's liquor license decisions have come before this trial judge for *preview and review* and the outcome in each is not incompatible with his pre-trial promises and predictions. These additional facts do not serve to allay my suspicions or dispel my lack of confidence. I do not join in the affirmance of the alleged judgment. I disavow it.

In the interests of justice and in the exercise of the supervisory powers of this court, the purported judgment should be set aside and the cause remanded for judicial treatment before a different judge.