## No. 8938.

### DENVER & SALT LAKE RAILROAD COMPANY v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, ET AL.

1. PUBLIC UTILITIES COMMISSION—*Subordination to the Supreme Court.* The Utilities Commission is under duty to obey the orders of the Supreme Court. No excuses for disobedience will be received.

Where an order of the Commission is set aside, such order is from that time a nullity. ·

2. *Statute Construed.* The provisions of the statute for suspension of an order of the commission (Laws 1913· c. 127, sec. 53) is permissive only, and in no sense a requirement. The suspension if granted is equivalent to the allowance of a supersedeas in other cases. An aggrieved party is not deprived of the right of review by failure to apply for the suspension.

3. *Submission to Order of Commission—Effect.* An order of the commission prescribed a division of through rates between certain connecting railway companies. The acceptance of the rate so prescribed, by one of the companies complaining thereof, pending a writ of error to review the same, is not to be held voluntary.

The complaining company succeeding in its writ of error is entitled to restitution of whatever it has been unlawfully deprived by complying with the.rates.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON and Mr. ELMER L. BROCK, for the petitioner.

Mr. E. E. WHITTED and Mr. A. S. BROOKS, for the Chicago, Burlington and Quincy Railroad Company.

Mr. W. V. HODGES and Mr. D. EDGAR WILSON, for the Chicago, Rock Island and Pacific Railroad Company.

Mr. THOMAS R. WOODROW, Mr. C. C. DORSEY and Mr. JOHN Q. DIER, for the Union Pacific Railroad Company.

Mr. L. J. WILLIAMS and Mr. A. P. ANDERSON, for the Public Utilities Commission.

Mr. Justice Scott delivered the opinion of the court.

ON February 10, 1916, the Public Utilities Commission of this state entered an order fixing the division of certain through rates between the petitioner and other railroad companies. From this order, the petitioner and the Chicago, Rock Island & Pacific Railroad Company applied to this court for a review.

On February 4, 1918, the court rendered its decision in said causes. *Denver & Salt Lake Ry. Co. v. Chicago, Burlington & Quincy Ry. Co.*, 64 Colo. 229, 171 Pac. 74; *Chicago, Rock Island & Pacific Ry. Co. v. Public Utilities Commission*, 64 Colo. 263, 171 Pac. 86.

The court in both cases reversed and set aside the order of the commission. This was principally because of the incorrect methods and rules adopted by which the commission reached its conclusions, all of which will fully appear in the several opinions of the court in the cases cited.

The order of the court in the case of the petitioner is in the precise words as follows:

"For the reasons stated the decision and order of the commission will be reversed and set aside, and the cause remanded for further proceedings not inconsistent with the views herein expressed."

The remittiturs in both cases were received by the commission on March 29, 1918.

Prior to the decisions of the Supreme Court and on the 27th day of December, 1917, upon stipulation of all parties,

the commission entered a new and different order covering the matters involved.

On March 29, 1918, the petitioner requested the commission to set the cases for further hearing and determination, which date was fixed by the commission for April 18, 1918, when all the parties appeared.

The respondents then filed their objections to further consideration of the matter and asked for a dismissal of the proceedings by the commission, which request was granted. The objection which seems to have been relied on by the Commission and by reason of which it dismissed the proceedings, was as follows:

"The Denver & Salt Lake, upon its application to the Supreme Court for a writ of review, neither made an application for nor filed an application for a suspension, nor filed any suspending bond, as provided by section 53 of the Public Utilities Act. The order fixing divisions consequently was in effect all of the time the writ of review was pending, and furthermore during all of the time the writ of review was pending, the Moffat road voluntarily and without protest accepted the divisions ordered in by the order in the three cases at bar."

The findings of the commission upon these objections and motions to dismiss are as follows:

"The commission finds the effect of such failure to be that the divisions fixed by it in these cases were in operation for the period from August 1, 1915, to December 27, 1917, and that the commission's order was never stayed or suspended; that the Commission is without power to change such divisions, as the rates under which these divisions were made are no longer in existence, and the commission cannot make divisions operative for the period from August 1, 1915, to December 27, 1917."

Upon application of the petitioner a rule issued out of this court on June 26, 1918, to the Public Utilities Commission, to show cause why it should not proceed with the hearing and determination of this cause as directed by the court.

This proceeding is upon the return and answer in the premises.

The question, then, to be determined is what was the force and effect of the decisions of the Supreme Court upon the rules and orders of the commission, fixing and determining the division of the joint rates to which the parties were entitled, and what were the duties and powers of the Commission in the premises as affected by the judgments of the court.

Section 52 of the Public Utilities Act provides among other things that:

"Upon hearing, the supreme court shall enter judgment either affirming, setting aside or modifying the order or decision of the commission. The provisions of the Code of Civil Procedure of this State relating to writs of review shall so far as applicable and not in conflict with the provisions of this act, apply to proceedings had in the Supreme Court under the provisions of this section."

Then unless otherwise provided by the act, the effect of the judgment of the court upon review is precisely the same as provided by the Civil Code and the rules of this court in other cases.

We find nothing in the statute in this particular in conflict with the Code, or our court rules.

It is plain that the commission was thereby commanded to hear the cause *de novo;* to determine the questions involved in the original hearing, and to determine these in the light of the methods and the law applicable as announced by the court. It has no discretionary powers in the premises. It was its plain duty to obey.

The power of the Supreme Court in the case of this primarily legislative tribunal with but limited quasi-judicial powers, is expressly conferred by the statute, and the same power and procedure is directed to be exercised over such tribunal as in case of judicial tribunals.

The rule announced by this court in *Galbreath v. Wallrich et al.*, 48 Colo. 127, 109 Pac. 409, 139 Am. St. 263, is:

"The rule is that where the mandate of an appellate court

directs a specific judgment to be entered, the tribunal to which such mandate is directed must yield obedience thereto. No modification of the judgment so directed by the appellate tribunal can be made by the trial court, nor can any provision be engrafted upon or taken from it."

The court further said in the opinion in that case:

"The reason for that rule is obvious. When a particular judgment is directed by the appellate court, the lower court is not acting of its own motion, but in obedience to the order of its superior. What that superior says, it shall do, it must do, and that alone. Public interests require that an end shall be put to litigation, and when a given cause has received the consideration of this court, its merits determined, and then remanded with specific directions, the court to which such mandate is directed has no power to do anything but to obey the mandate; otherwise, litigation would never be ended, and the supreme tribunal of the state would be shorn of that authority over inferior tribunals with which it is invested by our fundamental law. By permitting the filing of the supplemental answer and cross-complaint the trial court is proceeding contrary to what we directed. True, by this pleading none of the issues settled by the judgment we directed are to be relitigated, but that is not the question. We directed a particular judgment, and nothing is left for the trial court to do but to enter it. By the supplemental answer and cross-complaint it is sought to show that because something has happened since the original judgment was entered, and which was not in issue in the case, the judgment we have directed should not be rendered. To pursue this course is to ignore our mandate. Rights which may have accrued since the rendition of the original judgment, not in issue in the action in which it was rendered, are not adjudicated therein, but the trial court has no power to open or interefere with the judgment of this court in order to settle such rights. If since the original judgment, something has occurred which would render it inequitable to carry the judgment to execution which this court has directed, resort must be had to some form

of original proceeding by which appropriate relief can be secured. It cannot be done by way of defense to the entry of the judgment we have directed."

In that case the procedure to enforce compliance with the judgment of the Supreme Court was precisely as it is in this case. Application was made to this court and order issued to the lower tribunal to show cause why its mandate should not be obeyed. It is not the rule and would be absurd to institute an independent proceeding to secure the enforcement of the orders of an appellate court in a given case.

It would be a singular proceeding for this court to enforce its orders literally against a District Court having broad constitutional judicial powers, and still permit a primarily legislative tribunal to elect whether or not it would obey an order of the court, whatever may be its reasons for so doing.

The Public Utilities Commission has assigned two reasons for its actions: First, that the petitioner filed no application for a suspension bond for a stay of execution of the order of the commission, permitted by the statute; and that no stay was granted, and held for such reason its order remained in full force and effect and became final before the court rendered its judgment, because of a subsequent order fixing different rates in December, 1917; second, that by accepting the division of the joint rate under the order of the Commission, the petitioner voluntarily accepted such division and is bound thereby for such reason. It was then held that for such reasons, the commission is without power to change its original order for the period from the date thereof, August 1, 1915, to the date when the new rates and new apportionment went into effect, December 27, 1917, under a stipulation of all parties and an order of the Commission.

These are purely questions of law which the Commission had no power to determine, in the face of the mandate of the Supreme Court.

While it is not necessary that these questions be determined in the matter before us, yet with the expectation that

·the commission will obey the mandate of the court, and conduct a new hearing of the original question as therein directed, it may not be amiss to determine them now.

The statute provides that the losing party may have an order of the commission stayed, by the Supreme Court alone, upon complying with certain requirements, pending its determination of the questions involved, yet this right is permissive only.  It is in no sense a requirement, and the grant of such a stay rests solely upon the judgment of the court in the premises, and is clearly intended as an emergency provision.

The right to have such a stay is precisely like that of the grant of a supersedeas in other cases.  The power to grant the order or writ rests solely with the Supreme Court.  The statute declares that the procedure is to be that of the Civil Code.

Can it be said that, in case of appeal from the commission to the appellate court, where the court denies the stay permitted by statute, thereby and by reason thereof, the aggrieved party is to be denied his right of review expressly granted by the statute?   In case of review in ordinary matters, this court has never denied the right of review, and ·could not if it would, upon the ground that it had denied a writ of supersedeas.

When the court set aside the order of the commission, that order was thereby annulled and held for naught, and was of no more effect than if it had never been entered. The case stood precisely as it did before any hearing had been held or order entered at all.

The suggestion by the commission that after the order was entered fixing the division of joint rates, the petitioner voluntarily accepted the rates so ordered, is without merit.

The petitioner objected to the order in every lawful way provided by the statute.  It applied for and secured a reversal of the order.  The order was of effect from the date of its entry, and heavy penalties are provided for refusal to comply with any order of the commission while in force. To say that a compliance therewith under such circum-

stances was voluntary upon the part of the petitioner is too absurd for argument. It would be just as reasonable to say that the execution of a criminal under the judgment of a court was voluntary upon his part.

The law is unquestioned that a party procuring a reversal of an erroneous judgment is entitled to restitution.

That jurisdiction to correct what has been done wrongfully, remains with a court so long as the parties and the case are properly before it, either in the first instance, or when remanded to it by an appellate tribunal, was held by the Supreme Court of the United States in *Northwestern Fuel Co. v. R. G. Block et al.*, 139 U. S. 216, 35 L. Ed. 151, 11 Sup. Ct. 523, where the question is fully discussed.

Therefore the Public Utilities Commission has full power to order restitution in the case if it shall find upon the rehearing that there is an amount to be restored by it, proceeding under the direction of the court. The Public Utilities statute provides ample remedy for the enforcement of the orders of the commission through the courts.

It is ordered that the Public Utilities Commission proceed to a rehearing of the original cause as directed and ordered by this court in the cause above referred to, and in compliance with the rules of law therein announced, and to fix such proper apportionment of joint rates from the time of the inception of the proceeding before it, until the date of the order fixing a new and different apportionment, now in force.

*En banc.*

Burke, J., agrees with the conclusion only.