No. 18,146.

STATE CIVIL SERVICE COMMISSION, ET AL. *v.* NORTON C. CONKLIN.

(335 P. [2d] 537)

Decided February 16, 1959.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mrs. PATRICIA H. MALOY, Assistant, for plaintiff in error.

Mr. MAX P. ZALL, Mr. RONALD I. ZALL, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

HEREIN we refer to plaintiff in error as the Commission, to defendant in error as Conklin, the Board of Commissioners of the Soldiers and Sailors Home as the Board, and to the Soldiers and Sailors Home as the Home.

For a period of about two and one-half years prior to May 2, 1956, Conklin had served as commandant of the Home, he was in the classified civil service of the state of Colorado, held his position pursuant to and was subject to removal as provided by Article XII, Section 13, of the Constitution of Colorado.

On May 2, 1956, the Board filed with the Commission its written request that it immediately suspend Conklin as commandant of the Home, and, on hearing, that Conklin be discharged from the classified service and from his position as commandant. Reasons set forth as grounds for such requested actions were:

"1. — That Respondent has negligently and willfully failed to properly administer the State Soldiers and Sailors Home in that:

"(a) He has failed to properly control fiscal matters at the Home, there being a complete failure of supervision, proper bookkeeping and internal control, such failure resulting in a shortage of funds at the Home and loss of such funds by said Home, and by the people of the State of Colorado.

"(b) By reason of the use of heavy handed methods, abusive language and lack of self control, he has caused a large turnover in employee personnel at the Home, such turnover being detrimental to the general efficiency and proper administration and operation of the Home.

"(c) By completely failing to obtain a complete physical inventory of the assets of the Home, for his own protection, the protection of the Board, and the protection of the people of the State of Colorado.

"2. — That Respondent has willfully failed and refused to cooperate with the Board of Commissioners of the Soldiers and Sailors Home in matters concerning policy, operation, regulation and administration of the Home.

"3. — That Respondent has been willfully insubordinate to the Board of Commissioners, wholly refusing to obey and carry out the orders of said Board, and has used abusive language against and threatened with physical violence one member of said Board of Commissioners.

"4. — That Respondent has been and is incapable of preparing or supervising the preparation of a proper and complete budget concerning operation and administration of the Home, and that his inability and failure to do so has resulted in great detriment to the Home in securing legislative appropriations for the operation and maintenance of said Home.

"5. — That by reason of abusive treatment of members at the Home by Respondent, and by further reason of a complete lack of kindness and human understanding on the part of Respondent, there has been a large turnover in the membership at the Home, such large turnover being indicative also of lack of administrative ability on

the part of Respondent and being detrimental to the very purpose for which the Home was established.

"6. — That Respondent by reason of lack of proper supervision and administration of the boiler construction project at the Soldiers and Sailors Home, and misuse of authority caused the loss of money to the Home and the people of the State of Colorado, this Board never having been properly informed by Respondent of such conditions.

"7. — That Respondent has failed to make proper inspections, reports to this Board at regular Board meetings, and has failed and deliberately refused to obey and carry out instructions and policies of this Board of Commissioners."

The request for immediate suspension was denied, hearing date set, and copy of the charges and notice of hearing served on Conklin, who answered denying the charges. A hearing was had, at which hearing fourteen witnesses testified at the request of the Board and eight at the request of Conklin. The hearing was completed June 7, 1956, and on July 23, 1956, the Commission entered its Findings and Order as follows:

"The Civil Service Commission is convinced that an unfortunate condition has developed at said Soldiers and Sailors Home consisting of a complete breakdown and loss of confidence between the Board of Commissioners of said Institution and the present Commander thereof, and of such a serious nature that it will be impossible to effect a satisfactory restoration of relationship between them, and that a continuation of this situation would be extremely detrimental to the future successful operation of said Institution.

"While the Civil Service Commission is of the conviction that the Board of Commissioners of said Institution, or at least a part of them, have been more or less jealous of their statutory authority and reluctant to properly delegate authority to the Commander who is the Director thereof; however, said Commander has failed through

lact of tact, diplomacy, and self-control to meet the situation, and has irritated members of the Board of Commissioners, and aggravated rather than controlled the unfortunate situation of disagreement existing between himself and said Board of Commissioners;

"IT IS THEREFORE THE JUDGMENT OF THE COLORADO CIVIL SERVICE COMMISSION that the Respondent, Norton C. Conklin, Commander and Director of said Colorado State Soldiers and Sailors Home, Homelake, Colorado, should be and hereby is removed as Commander and Director of said Institution, to become effective with the close of business on July 31, 1956; that said employee, Norton C. Conklin, shall be entitled to his accumulated annual leave for which he shall be paid beyond the termination date of his employment as set herein.

"IT IS FURTHER ORDERED that the status of said Norton C. Conklin as a certified employee of State of Colorado and his rights as such shall be and are terminated."

Conklin sought review of this order in the district court by proceedings under Rule 106 (a) (4), R.C.P. Colo. The trial court entered judgment vacating the order of removal and the Commission is here by writ of error seeking reversal of the judgment and reinstatement of the order of removal.

Analysis of the above findings indicates the Commission determined that at the Home:

1. An unfortunate condition has developed — loss of confidence between the Board and Conklin — that a continuation of this situation would be detrimental to the future successful operation of the Home. The Commission makes no finding as to whether the Board or Conklin is chargeable with this "unfortunate condition."

2. (a) That the Board or part of them have been more or less jealous of their statutory authority and reluctant to properly delegate authority to Conklin.

(b) Conklin has *failed* through lack of *tact,* diplomacy

and self-control to meet the situation and has irritated members of the Board and aggravated rather than controlled "the unfortunate situation of disagreement existing between himself and said Board * * *."

■ The Commission made no specific findings with reference to any of the seven charges preferred against Conklin. There was much conflict in the testimony at the hearing with reference to the charges, and only the Commission, trier of the facts, is vested with authority to determine the facts.

■ The Commission's order of removal is in no way predicated on any of the charges against which Conklin was required to answer and defend, but is based entirely on findings of loss of confidence between the Board and Conklin, lack of tact, diplomacy and self-control to meet the "situation" (loss of confidence), has irritated members of the Board and aggravated an unfortunate situation. Conklin was never charged with these matters and had he been so charged they do not constitute sufficient grounds for his removal.

■ To summarize, Conklin was charged with acts and omissions which, if proven, generally would warrant his removal. He has never been found guilty of any of these charges, so cannot be removed on account thereof. Conklin was never charged with lact of tact, diplomacy, etc., and was never tried therefor, though found guilty thereof. Findings on matters not within the purview of the charges cannot be the basis for removal; doubly so when the facts found do not constitute sufficient grounds for removal.

■ It was improper for the Commission to try Conklin on matters other than those charged, and against which he was required to defend; it was improper to find him guilty of shortcomings of which he was not charged and it was improper to remove him for reasons that were not valid legal grounds for removal. Such order of removal cannot be sustained.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DOYLE dissent.

MR. JUSTICE DOYLE dissents:

I disagree with the opinion of the majority that the judgment of the district court should be affirmed. I would reverse the judgment of the district court insofar as it operated to *void* the proceedings before the Commission.

The judgment of the district court operated to "vacate" the order of the commission. In the course of his ruling, the judge gave reasons for vacating:

" * * * the commission entertained documentary evidence, held conversations out of the presence of the Complainant, or Plaintiff in this case, who under the law was entitled to a fair hearing before the Commission and that while the matter was under advisement, based upon a record, one of the commissioners discussed this matter with Frank Hays, entertained letters from him pro and con, and thereafter made a finding which is so vague that the Court could not determine from that what charge, if any, he is guilty of; and that the Complainant in this case, Norton C. Conklin, has not had due process of law as provided in the Constitution and under the Civil Service Act, now therefore:

"IT IS ORDERED, ADJUDGED AND DECREED by the Court that the Order of the State Civil Service Commission be, and hereby is, vacated."

It is to be noted that the case was not remanded for a new trial or for the entry of appropriate findings. The findings were ordered vacated. The mandate of this Court is a simple affirmance of the action of the district court and the net effect is approval of reinstatement of defendant in error — plaintiff — which was ordered by the district court.

What is the basis for the action of the majority? The opinion discloses that the findings and conclusions are not responsive to the charges and the evidence. The

Court does not hold that the charges are insufficient in law or that the evidence at the hearing was insufficient to support the charges. It holds that the *findings* are inadequate. Thus the deficiency is a mere procedural one. Having condemned the findings of the Commission, the case should have been remanded to the district court with instructions to that court to remand the cause to the Civil Service Commission with orders to determine specifically whether the evidence supported the charges, and to enter definite, particular and concrete findings relative to each charge. Or in the alternative the mandate could have directed a new trial or other proceedings consistent with the views expressed.

The applicable Constitutional and statutory provision does not contemplate the procedure followed herein. Art. XII, Sec. 13, provides for dismissals, and requires only that there shall be written charges and a hearing. It declares:

"Persons in the classified service shall hold their respective positions during efficient service and shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties. They shall be removed or disciplined only upon written charges, which may be filed by the head of a department or by any citizen of the state, for failure to comply with such standards, or for the good of the service, to be finally and promptly determined by the commission upon inquiry and after an opportunity to be heard. No person shall be discharged for a political or a religious reason. In cases of emergency or for employment of an essentially temporary character, the commission may authorize temporary employment without a competitive test."

The statutory provision, C.S.A. 1953, 26-1-4, is in the same language. The grounds for dismissal are declared to be inefficiency or "for the good of the service." Unquestionably good practice requires written findings, responsive to the charges and the evidence, unequivo-

cally determining whether inefficiency or discharge for the good of the service have been made out. 146 A.L.R. 209. The instant findings fail to do this, and the trial court was justified in ordering that the findings be set aside. But in the absence of a legislative mandate that the charges be voided the appropriate procedure was to send the case back with instructions to correct the administrative mistake, and to supply the omission.

The general rule set forth in 42 Am. Jur. 689, Public Administrative Law, Sec. 248, calls for remand in circumstances like those at bar.

" * * * the general rule is that the courts, even in the absence of statute, have such power where it is necessary to effectuate the demands of justice, and statutes frequently grant such authority to the courts. The court does not encroach upon the administrative function by such procedure. There is nothing in the principles governing judicial review of administrative acts which precludes the courts from giving an administrative body an opportunity to meet objections to its order by correcting irregularities in procedure, or supplying deficiencies in its record, or making additional findings where these are necessary, or supplying findings validly made in the place of those attacked as invalid. * * * "

In a recent decision, *Board of Commissioners v. Salardino,* 136 Colo. 421, 318 P. (2d) 596, we held that the record was inadequate and ordered that the case be remanded:

"There is nothing before us in the present case from which we can determine whether the action of the Board in denying the license was arbitrary. Such being the case, our decision in *Geer v. Presto,* 135 Colo. 536, 313 P. (2d) 980, controls, and the trial court should have remanded the matter back to the Board for further proceedings. The following language from *Geer v. Presto,* supra, is pertinent:

" 'Where the findings and determination of the administrative authority [the Board] are so imperfect and

contradictory as to preclude the trial court from basing a considered judgment thereon, we, being in no better position than the trial judge, have but one course to pursue — we must reverse. * * * Imperfection of the determination of an administrative board which leaves no avenue for the court to take in reviewing the matter, and which furnishes no basis upon which to resolve whether the board may or may not be sustained, requires reversal. * * *

" ' * * * Administrative hearings should be decided according to the evidence and the law. Findings of fact should be sufficient in content to apprise the parties and the reviewing court of the factual basis of the action of the administrative agency, so that the parties and the reviewing tribunal may determine whether the decision has support in the evidence and in the law. * * * '

"The judgment of the district court is reversed and the cause remanded with directions to the trial court to remand the matter to the Board of County Commissioners of Fremont County for hearing on the plaintiff's application and the taking and recording of all testimony, exhibits, and other evidence in support of the application, together with all testimony, exhibits, and evidence in opposition to the application; for the making of specific findings of fact as the basis of an order granting or denying the license applied for."

If the majority had ruled the evidence to be *insufficient* to support the charges, or had agreed with the district court that the defendant in error was deprived of due process, the present mandate would be justified. In *Civil Service Commission v. Hoag,* 88 Colo. 169, 293 P. 338, this Court upheld a judgment of the district court which judgment *voided* the order of the Civil Service Commission because the evidence was wholly insufficient to support the charges. Our language in that case shows the contrast between an "insufficiency" case which was there presented and an "administrative nicety" case such as the instant one. We there said:

"Undoubtedly, the Civil Service Commission has the power to adopt standards of efficient service and to remove its employees upon charges of inefficiency being filed and after a hearing, if the evidence supports the charge. Also they may remove 'for the good of the service' if written charges are filed, a hearing is had thereon and evidence to support the same is introduced. An order of removal based upon a finding of inefficient service or 'for the good of the service' must be supported by evidence sufficient to justify such a determination. If evidence at any such hearing is sufficient to justify the Civil Service Commission in the exercise of its discretionary power of removal, the courts are powerless to interfere with such exercise of discretion. However, where a complaint has been made that no sufficient evidence was introduced to support the charges made, the court undoubtedly has the jurisdiction and power to review such proceedings. *Civil Service Com. v. Cummings,* 83 Colo. 379, 265 Pac. 687; *Merrick v. Halsey & Co.,* 242 U.S. 568, 37 Sup. Ct. 227; *McLaughlin v. Mayor of Cambridge,* 253 Mass. 193, 148 N.E. 458; *Bash v. Allen,* 24 Del. 444, 76 Atl. 370; *Ekern v. McGovern,* 154 Wis. 157, 142 N.W. 595."

Our more recent decision in *Commission v. Hazlett,* 119 Colo. 173, 201 P. (2d) 616, also recognized that this Court has a limited power to review the proceedings before the Civil Service Commission. We there said:

"It should be observed at the outset that the constitutional provision applicable herein confers upon the Civil Service Commission, and not upon the courts, the exclusive jurisdiction to ascertain the qualifications, fitness and merit of applicants for positions under classified service, and the final determination as to when, under what circumstances, and for what causes those in such service may be removed therefrom.

"The scope of review in certiorari proceedings, and the authority of courts to interfere with the findings of tribunals vested with exclusive jurisdiction to determine

particular issues, have, by a long line of decisions, been judicially defined. We cannot consider herein whether the commission's findings are right or wrong, substitute our judgment for that of the commission, or interfere in any manner with the commission's findings if there is any competent evidence to support the same."

It follows then that judicial review is here limited to a determination of the sufficiency of the charges, and the sufficiency of the evidence to support the charges. If it is concluded that the charges are insufficient in law or that the evidence is legally insufficient, the defect is fatal, and a judgment voiding the proceeding is justified. If, however, it is concluded that the charges and evidence are *sufficient* but that the findings do not spell out "inefficiency" or "discharge for the good of the service," the obvious remedy is repair of the findings so as to conform to the charges and the evidence, or in the alternative, a new trial. To my mind, the "repair" order would have been appropriate.

MR. JUSTICE SUTTON has authorized me to say that he joins in the views which are expressed herein.