No. 19,215.

Colorado Anti-Discrimination Commission, et al. *v.*
Continental Air Lines, Inc.
(355 P. [2d] 83)

Decided August 15, 1960.     Rehearing denied September 19, 1960.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank

E. HICKEY, Deputy, Mr. CHARLES S. THOMAS, Assistant, Mr. ROBERT L. NAGEL, Assistant, Mr. EDWARD MILLER, Special Assistant, for plaintiff in error Colorado Anti-Discrimination Commission.

Mr. T. RABER TAYLOR, for plaintiff in error Marlon D. Green.

Messrs. HOLLAND & HART, Mr. PATRICK M. WESTFELDT, Mr. WILLIAM C. McCLEARN, Mr. WARREN L. TOMLINSON, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error Marlon D. Green by name, and to all other plaintiffs in error as the Commission. Defendant in error will be referred to as Continental.

Green filed a complaint before the Commission in which he alleged that Continental unlawfully discriminated against him by reason of the fact that he is a Negro, and had refused to give him employment as an airplane pilot because of his race, notwithstanding that he was in all respects qualified for the employment he sought.

The Commission conducted extensive hearings pursuant to authority to do so as provided by C.R.S. 1953, 80-24-5 (6). At the conclusion of the hearings it entered "Findings of Fact, Conclusions of Law and Orders" in which Continental was found guilty of discriminatory and unfair employment practice in its requirement that in application forms the racial identity of an applicant for employment be shown and a photograph attached. The Commission found that Green was better qualified for the position than any applicant interviewed but was not hired because of his race. The Commission assumed

the constitutionality of the Act; that it had jurisdiction to hear the complaint, and found there was a violation as charged by Green. It ordered Continental to cease and desist from the discriminatory and unfair employment practice; to give Green the first opportunity to enroll in its training school in the next course; and fixed Green's priority status as of June 24, 1957. Green was given until January 10, 1959, to indicate his willingness to enter the next pilot training course and this expression of willingness was duly filed by him. The record before us shows that the said order was signed by the "coordinator" of the Commission only and the seal of the Commission was affixed thereto.

Continental then filed a petition in the district court of the City and County of Denver in which it sought judicial review of the Commission's order. The hearing in the district court was terminated by entry of the following order:

"It is ordered by the Court that the cause and commission record be forthwith remanded to the Colorado Anti-Discrimination Commission; and

"It is further ordered by the Court that said Commission make findings of fact as to the Type and Nature of business that the Petitioner is engaged in; as to whether or not it is engaged in Interstate Commerce, and a finding by the Commission as to whether or not the Petitioner by virtue of that occupation and business is subject to the Anti-Discrimination Act; and also as to whether the job in question which Mr. Green applied for was a job that actually involved interstate operations.

"It is further ordered that upon making the additional findings, the Commission return the record to this Court, and this Court will retain jurisdiction."

The court also ruled that the Commission's order was defective in that it was signed by the coordinator only.

Upon receipt of this remand from the district court

the Commission entered an order which included the following:

"It is our understanding that the matter having been remanded to us by the Court, and particularly in view of the fact, as pointed out by the Court, that the purported original findings of fact and conclusions of law and Orders of December 19, 1958, were signed by the Coordinator, and are to that extent defective, that it is therefore within the Commission's jurisdiction, and upon its own motion, it does hereby, withdraw its December 19, 1958, findings of fact, conclusions of law and Orders."

Without further notice to the parties, or hearing of any kind, the Commission entered new findings and new orders consisting of nineteen typewritten pages, whereas the original document consisted of only five pages. As thus enlarged the record went back to the district court where it was held that the order of the Commission to which the proceedings for review had been instituted, having been withdrawn by the Commission, was no longer in existence, and that the questions raised by the proceedings in the district court were moot. The court held that the enlarged nineteen page order of the Commission was a nullity since it had been entered without notice to the parties and without a hearing.

The record before us does not disclose that any judgment of dismissal was entered. It does, however, contain a statement by the trial judge that: "The Court will dispense with a motion for new trial and grant any aggrieved party 30 days to take such proper proceedings on appeal as they may care to." Whatever might have been intended, the trial court did not enter a final judgment which, except for stated exceptions, is essential to a review on writ of error. We might well dismiss this writ of error but to do so would only cause embarrassment and further delay. For the reason that the cause must be remanded for further consideration by the trial court we treat the matter as though a judgment of dismissal had actually been entered since it is quite ap-

parent that the trial court intended to accomplish that result.

Question to be Determined.

■ *Where a hearing has been had before the Anti-Discrimination Commission and a final order has been entered; and where a party to those proceedings seeks review by the district court as provided by statute; does the Commission thereafter have jurisdiction, of its own motion, to vacate, alter, amend or in any manner enlarge upon the order to which the proceedings on review are directed?*

The question is answered in the negative. The pertinent portion of the statute (C.R.S. '53, 80-24-8 (3)) provides that when the petition for review is filed:

" * * * The court shall have jurisdiction of the proceeding and the questions determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony and proceedings set forth in such transcript an order enforcing, modifying and enforcing as so modified, or setting aside the order of the commission, in whole or in part."

Subsection (7) of the same statute provides:

"The jurisdiction of the court shall be exclusive and its judgment and order shall be final, subject to review by the supreme court as provided by law."

■ It is clear that the above quoted language is controlling and requires the negative answer to the question. Even in the absence of the language of the statute this court has repeatedly held that an administrative agency is without authority to change, alter or vacate an order while review proceedings are pending in the district court, even as an inferior court is without authority to vacate or modify a judgment after writ of error has issued out of this court directed to such judgment. We direct attention to the following cases in this connection: *Denver & Salt Lake Railroad Company v. Chicago, Burlington & Quincy Railroad Co., et al.*, 67

Colo. 155, 185 Pac. 817; *Morgan v. U.S.*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; *Mantor v. Industrial Commission, et al.*, 89 Colo. 90, 299 Pac. 11; *Davidson Chevrolet, Inc., et al. v. City and County of Denver, et al.*, 137 Colo. 575, 328 P. (2d) 377; *Brooke v. People*, 139 Colo. 388, 339 P. (2d) 993.

▮ It follows that the attempt of the Commission to vacate its original order was void. That order is the only one which was properly before the district court for adjudication concerning its validity. The district court has not passed upon that issue but remanded the cause to the Commission with directions to make specific findings on specific issues. The Commission failed to comply with this order. It had no jurisdiction to do other than as directed by the trial court which should require performance of its order if for any reason it cannot take judicial notice of the facts upon which it asked for the entry of findings. In any event the district court must pass judgment upon the merits of the controversy, and until such judgment is entered there is nothing before us to affirm or reverse.

The writ of error is dismissed and the cause remanded with directions for further proceedings in conformity with the views expressed herein.

MR. CHIEF JUSTICE SUTTON, MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE specially concur in the result.

MR. JUSTICE DOYLE specially concurring:

I agree with that part of the majority opinion which reverses the judgment of the trial court and I also agree with the majority's view that the original order of the Commission was not invalidated by the remand of the district court and by the Commission's attempted substitution of new findings. Being of the opinion, however, that this Court has jurisdiction to decide the important issues and that it should do so now rather than to await a further trial and a further judgment of the

trial court, I dissent from that part of the opinion which orders the district court to conduct a hearing and determine the issues. In order to provide a better understanding of the legal questions before us, it is necessary to set forth the important facts giving rise to the controversy.

The case arises under the Colorado Anti-Discrimination Act of 1957, C.R.S. '53, 80-24-1. The complainant Marlon Green applied to Continental Air Lines, Inc., for employment as a commercial air line pilot. His application was denied notwithstanding that he satisfied every qualifying standard. This denial occurred after Green had filed a complaint before the Michigan Anti-Discrimination Commission and also complained to the President's Commission. He filed the present complaint following notification that his application had been passed over.

The facts are that Green, while still serving as a Captain in the United States Air Force, sent letters of application to the major air lines in the United States. Following his discharge from the service on May 8, 1957, he made further applications in person, by mail and by telephone. Among these was an application to Continental Air Lines on April 27, 1957. At this very same time, Continental was seeking approximately fourteen pilots.

On June 19, 1957, Continental called Green for an interview, but at this time it did not know he was a Negro. Both the application form which Green filled out in Denver when he had his interview and the one he mailed previously had blank spaces to be filled in with the race of the applicant. Green was asked by the interviewer in Denver to fill in the blank which he had left unfilled. In addition, a photograph of the applicant was required, which was not furnished. Green met the age and physical requirements and had many more flight hours, including multi-engine experience, than were required for the job, and more than any other applicant.

Continental's vice president in charge of personnel, Mr. Bell, testified at the hearing before the Commission that Green's general qualifications were satisfactory. Of the fourteen applicants interviewed by Continental in July only six, including Green, were found to be qualified. Four of these were taken into the July training class. One was taken into a later class. Of the six found to be qualified only Green was not ultimately employed.

A telegram was sent to Green on July 8, 1957, informing him that he had not been selected for the July training class; he did not receive this telegram but was given the same information by Mr. Bell in a telephone conversation. At that time Bell told him that he was still on the eligible list as a qualified pilot. At the hearing, the explanation of Continental as to why Green was passed over was that they did not need six pilots that month and that their selection from among those found to be qualified was made in a "haphazard" way and was not based on a determination of who among the group were the best qualified. Continental offered no clear explanation of who actually made this haphazard determination. In August and September Continental hired seventeen additional pilots. Bell testified at the hearing that Green's name was held in the eligible file and that only when Continental learned that Green's name had been in an Albuquerque, New Mexico, newspaper story which disclosed the fact that Green had filed complaints with the Michigan Fair Employment Practices Commission and the President's Committee on Government Contracts was Green's name withdrawn from the eligible file. The newspaper article is dated one day after Green's letter of complaint to the Colorado Anti-Discrimination Commission on August 3, 1957. Bell testified that it was Continental's policy to reject any applicant to whom notoriety had attached.

Efforts at conciliation were begun soon after the filing of the complaint and extended over many months. These efforts were unsuccessful and a full hearing on the com-

plaint was finally held on May 7, 1958. The Commission did not issue its findings of fact and conclusions of law until December 18, 1958. Prior to this time Green had informed the Commission of his desire to withdraw his complaint.

After reciting the facts set forth above, the Commission concluded that Continental was guilty of a discriminatory employment practice, as defined in regulations adopted under the act, in its requirement of a photograph of the applicant and a designation of his race on the application form. The Commission found that Green was better qualified than any applicant for the position and that he was denied employment "because of the discriminatory act of Respondent." It also found that the evidence did not show that Continental used extreme care in the selection among applicants for pilot positions. It pointed out that Continental could not make clear through its witnesses "who was charged with the selection of the successful applicants." It found that the evidence conclusively established that the only reason that "the complainant was not selected for training school * * * because of his race."

In its order, the Commission noted that Green had requested that his complaint be withdrawn, that under the rules of the Commission the vote of a majority of the commissioners was necessary before a complaint could be withdrawn after the case was noted for hearing, and that since the required majority vote was not obtained the complaint could not be withdrawn.

Continental was ordered to cease and desist from such discriminatory employment practice, to give Green the first opportunity to enroll in its school in its next course, and to give him a priority status as of June 24, 1957. Green was directed to advise the Commission whether he was willing to enter the next training class. The Commission specifically retained jurisdiction.

Continental sought review of the order in the district court. The case came before the court on June 11, 1959,

but before any hearing was had the trial judge on his own motion remanded the cause to the Commission for the purpose of making findings with regard to (1) the type and nature of the business that Continental Air Lines is engaged in, (2) whether Continental Air Lines is engaged in interstate commerce, (3) whether by virtue of that business Continental is subject to the Anti-Discrimination Act, and (4) whether the job in question was one that actually involved interstate operations. It should be noted that the Commission order had stated "The respondent is a duly authorized and certificated commercial carrier by air and maintains an office at Stapleton Airfield, Denver, Colorado." The trial court did not at this point (or at any time thereafter) pass on the contentions made in Continental's complaint and petition for review. The complaint contained six claims:

First, that the Commission was without jurisdiction over the subject matter; Second, that the statute, if applied to an interstate carrier by air such as Continental, is unconstitutional; Third, that the findings of the Commission are not supported by substantial evidence and that the Commission erred in receiving in evidence statements made by agents of Continental during settlement conferences; Fourth, that Green's attempt to withdraw his complaint deprived the Commission of jurisdiction to proceed further and that the Commission had no power to adopt its regulation relating to withdrawal of complaints; Fifth, that the absence of the full Commission from the hearing of May 7, 1958, rendered its decision invalid and that there is no showing that members present made the findings submitted; and Sixth, that the findings and conclusions of the Commission are void and unenforceable because of their vagueness and uncertainty.

On the remand the Commission did not limit itself to supplementing the findings with findings requested by the trial court, but instead withdrew its first order and on June 19, 1959, issued its second order which was

longer and more detailed than the first. This second order dealt largely with the constitutional issues but included a thorough resume of the evidence and findings regarding discrimination, which were virtually the same as the findings in the first order. The second order was also objected to and a hearing held on these objections by Judge Black on June 25, 1959. The court concluded that both the first and the second order were invalid and that there was nothing before it to review. As to the first order, the court said that the fact that the Commission had withdrawn it, meant that it had no further legal effect. As to the second order, the court held that since it had been issued without a hearing it was also invalid.

The contention of the complainant Green is that the trial court erred in remanding the first order to the Commission for findings relating to interstate commerce and in not passing on the merits of the order for the reason that it was irrelevant to the question of the jurisdiction of the Commission or the constitutionality of the Anti-Discrimination Act — whether Continental was engaged in interstate commerce. That the court erred in not considering the first order on its merits. As to the hearing on the second order, Green contends that the court erred in not considering his motion to strike; that it was error to find the second order a nullity because no hearing was granted.

It is apparent from the recitation of the above facts and discussion of the proceedings had that the delays in processing this complaint have been such as to threaten in and of themselves to deprive the complainant of a remedy. To paraphrase a familiar axiom, this is a situation in which justice delayed results in justice being denied. It seems to me that the complainant is entitled to have his case decided either favorably or unfavorably and that he should not be subject to another long delay incident to a retrial of the merits and a review in this

Court of a judgment therefrom entered, unless such additional proceedings are absolutely necessary.

Since all of the evidence in the case has been adduced and all of the issues in the case have been framed, it seems to me that this Court can and should take the responsibility of deciding the cause now rather than postponing a final decision for an indefinite time while the judicial machinery gets around to a new trial and then returns the matter here for review. The question is whether a compelling legal reason requires these further legal steps. The majority opinion points out that the statute vests exclusive jurisdiction in the district court to review the order of the Commission (C.R.S. '53, 80-24-8(7)). However, the statute was not written in contemplation of proceedings such as the present ones. Normally it would be proper and legal for the district court, to the exclusion of other courts, to review the proceedings before the Commission and thereafter we would review the action of the district court with reference to the Commission's order. The matter for decision before the district court and before this Court would be identical. *First,* there would be the question of jurisdiction of the Commission, and *secondly,* the question of whether the findings of the Commission are supported by substantial evidence. Since this Court will finally have to come to grips with these questions, it seems to me pointless to postpone the day of decision by sending it back to the trial court for a preliminary determination when it is within our power to *now* perform the identical function which we will be required to perform in the future. What contribution will be made by a preliminary trial court ruling which is in no way binding on us?

Ordinarily I do not approve of legal short cuts, but this case has been before the trial court twice and on each occasion that court has failed to decide the merits. Moreover, the trial court has no fact finding function here.

In other cases involving administrative decisions, this

Court has not hesitated to go to the heart of the controversy and decide the case on its merits even though strict observance of orderly administrative procedure required remand of the case for further determination or further hearing. For example, in *Linder v. Copeland,* 137 Colo. 53, 320 P. (2d) 972, a case involving the Colorado State Board of Examiners of Architects, it was concluded that the findings of the Board were inadequate and for that reason could not be reviewed. At the same time the Court found that there was no evidence in the record which supported the Board's conclusion. In view of this the Court entertained jurisdiction of the case, held that the record was devoid of evidence, directed that the Board's denial of an application be vacated and directed the Board to issue a license to the applicant. It was there observed:

"When, as here, a court is called upon to review the action of an administrative agency, it should be placed in the same position as the agency. * * * "

The case of *Geer v. Stathopulos,* 135 Colo. 146, 309 P. (2d) 606, was relied on in the *Linder* case. In the *Stathopulos* case, the Court concluded that the plaintiff in error had not had a fair trial. Nevertheless, the Court reviewed the case as though it had not been before the trial court and used the following pertinent language:

"The review of the Manager's action, denying the application for a liquor license, came before the trial judge on a printed record — the identical record before this court. Hence, there is no difference, as to what is being reviewed, between the trial court and this court. 'In other words, this court "will examine the record as though the matter had never been heard or examined by the trial court, and will exercise its discretion in the matter as a trial court is authorized to do in such matters." ' *Boise Flying Service v. General Motors Accept. Corp.,* 55 Ida. 5, 36 P. (2d) 813. Thus, the question initially forming the subject of this controversy will be fairly and impartially reviewed here, and there is no

need for this court to go into the question of the disqualification of the trial judge.

"We are not concerned with the rule ordinarily applicable to writs of error before this court — that we must approach the facts of a case by constantly keeping in mind the exclusive vantage point of the trial judge in that he was able in the trial to use his eyes, ears and intelligence to discern wherein was truth, and wherein credit and weight should be given to the testimony of witnesses. Such is not required in this case. The rule is well stated in *Miller v. Taylor*, 6 Colo. 41, as 'The testimony in this case was taken before a referee, and the rule that a decree or judgment will not be disturbed unless manifestly against the weight of evidence does not obtain. * * * ' "

Still another example involving the decision on its merits by this Court of a controversy which originated before an administrative tribunal is that of *McNertney v. Colorado State Board of Examiners of Architects,* 139 Colo. 554, 342 P. (2d) 633. See also *State Civil Service Commission v. Conklin,* 138 Colo. 528, 335 P. (2d) 537, wherein the Court concluded that the findings of the Civil Service Commission were insufficient (even though the evidence might have been sufficient to justify the conclusion reached). Here the mandate was that the judgment of the trial court voiding the proceedings before the Commission should be affirmed.

It is thus apparent that in recent decisions this Court has not hesitated to determine the merits of an administrative matter notwithstanding that the proceedings before the administrative tribunal or the trial court were inadequate. Consequently, I cannot see why strict procedural nicety should be observed in the present case wherein substantial justice demands a speedy decision upholding the Commission or reversing it.

Every question which has been raised here is a question of law. See *Radke v. Union Pacific R. R. Co.,* 138 Colo. 189, 195, 334 P. (2d) 1077. No finding of the Com-

mission was necessary with respect to whether Continental Air Lines is subject to the jurisdiction of the Commission. This was a question of law which the court should have determined from the undisputed facts in the record. The same is true of the other issue on which the trial court demanded a finding, that is, the question of whether Continental Air Lines was engaged in interstate commerce. It seems to me that this question is one subject to judicial notice, *Rush v. Thompson,* 356 Mo. 568, 202 S.W. (2d) 800, and that the conclusion that this company is engaged in interstate commerce is clear beyond doubt. A finding on this question is not necessary and if it were made would be superfluous. Any decision concerning jurisdiction should therefore be premised upon the fact that Continental is so engaged.

I have examined the arguments of Continental going to the proposition that the controversy was outside the jurisdiction of the Commission, and I disagree with them. The sweep and scope of the language of the Anti-Discrimination Act makes it clear that its purpose is not limited to intrastate matters. C.R.S. '53, 8-24-2 (5). I am aware of no federal constitutional objection to this assertion of state power. *Cooley v. Board of Wardens of the Port of Philadelphia,* 53 U.S. (12 How.) 299; *Railway Mail Assn. v. Corsi,* 326 U.S. 88. From a reading of the pertinent Federal statutes, e.g., 45 U.S.C. Sec. 151 *et seq;* 49 U.S.C. Sec. 401 *et seq;* and the related decisions, I am convinced that the application of the present statute to an interstate carrier does not conflict with the national commerce power. It cannot be said that the federal government has expressly or by implication preempted this particular field. In fact, no federal statute deals with employment discrimination by interstate carriers. Consequently, the state is not deprived of jurisdiction by reason of the nature of the regulation or by reason of federal preemption. Cf. *Bob-Lo Excursion Co. v. Michigan,* 333 U.S. 28; *Williams v. International Brotherhood of Boilermakers,* 27 Cal. (2d) 586, 165 P. (2d) 903.

I am convinced that the sole question for determination in this case is whether there is substantial evidence in the record to support the findings and order of the Commission. C.R.S. '53, 80-24-8 (6). I am also convinced that under the facts here presented we should make this determination — that we should not postpone action until there has been a preliminary decision by the trial court.

Is there evidence in the record which furnishes a substantial basis for the finding of the Commission that Continental refused to employ complainant because of his race? In answering this, it should be noted that discrimination, much like intent and motive, is difficult to prove. It requires motivation analysis and circumstantial evidence is the usual method of proof. It should also be noted that the Commission is made up of persons who are expert in this field.

The basic facts which give rise to the inferences which were drawn by the Commission are these: Continental required complainant to disclose his race in the application blank furnished to him. This would indicate the significance of this factor to Continental. The fact that Green was one of six of a group of fourteen found to be qualified and that Green was the only one of the six to be excluded is also important. This coupled with the fact that Green was admittedly qualified would indicate that he was rejected only because of his race. When these facts are related to the fact that two months later 17 new applicants were enrolled in a training class, the testimony of Continental that they needed only four in July when they rejected Green is questionable. Continental failed to come forward with an explanation for the rejection of Green other than the publicity incident to his complaint in Michigan. This reason does not justify their action in these circumstances. To hold it sufficient would mean that the applicant would be precluded from exercising his legal rights while being effectively stymied by delays in acting on his application.

This would create an impossible dilemma for the applicant. The finding of the Commission supported by evidence that Green was the best qualified of the applicants is another meaningful fact.

One cannot read the record without being impressed that this complainant had extraordinary qualifications. He appears as a very well trained individual and also as a well adjusted, highly intelligent person. There is no trace of bitterness nor of an attitude of dramatics. The reader gets the impression that Green was not filling a role or serving as an instrument in a test case, but on the contrary the conclusion is inescapable that he pursued this remedy with a high degree of good faith.

In view of the study of the facts, a conclusion is inescapable that there is ample evidence to support the Commission's findings and that in fact there is a dearth of evidence to support a contrary finding.

In fairness to Continental, it should be pointed out that although they are shown to have discriminated the record does not indicate that they did so out of any attitude or viewpoint of personal animosity or prejudice. One gets the impression that perhaps Green was rejected with reluctance and in response to outside pressures. One of the Continental officials spoke frankly to Green concerning the practical concerns entertained by them in connection with employing him.

In conclusion, it should be mentioned that cases like the present one are very rare. This type of matter is normally handled by conciliation and settlement and seldom reaches the litigation stage. It is pointed out in a note in 68 Harv. L. Rev. 685 entitled *The Operation of State Fair Employment Practices Commissions* that as of 1955 only 8 of 6,000 complaints reached the hearing stage. The fact that this is the first case of its kind to come before this Court attests to the fact that the persons responsible for enforcement of this act are fully aware that conciliation and settlement is better adapted to the disposition of such cases than is litigation.

I am of the opinion that the original findings of the Commission were sufficient and valid, and that the remand of the trial court did not have the effect of invalidating them. It is also my opinion that the Commission had jurisdiction and that it exercised its power properly. The evidence was amply sufficient to support the findings. The case should therefore be remanded to the trial court with directions to enter a judgment affirming the orders of the Commission.

I am authorized to say that MR. CHIEF JUSTICE SUTTON and MR. JUSTICE FRANTZ join in this specially concurring opinion.