## No. 12,518.

STATE CIVIL-SERVICE COMMISSION ET AL *v.* HOAG.
(293 Pac. 338)

Decided November 10, 1930.

Mr. GEORGE P. STEELE, Mr. PHILIP HORNBEIN, for plaintiffs in error.

Messrs. LEE, SHAW & McCREERY, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

STATE Civil Service Commission, and Elizabeth Quereau and J. M. Jones, commissioners, constituting a majority of the State Civil Service Commission, plaintiffs in error and defendants below, seek to reverse a judgment of the district court reinstating Frank S. Hoag, defendant in error and plaintiff below, as a member of the Colorado Board of Corrections.

In March, 1929, charges were filed before the State Civil Service Commission by George H. Sweeney against defendant in error seeking to remove him as a member of the Colorado Board of Corrections. These charges, amended and supplemental, consisted of 19 separate counts of which 8 were dismissed from the case upon demurrer, 10 others were dismissed either by the petitioner or the commission itself. The portion of the remaining count upon which the judgment of ouster by the State Civil Service Commission was based, charges:

"That he has used his official position as a member of the Board of Corrections to further and promote his own personal, private ends and purposes as follows:

\* \* \*

"2. That the said Hoag, in violation of the Civil Service Amendment and the standards of efficiency required by said Amendment and laws enacted pursuant thereto, has wasted large amounts of the public funds and the money of taxpayers in the buying of supplies for the institutions under the control of the said Board of Corrections at higher prices than said supplies could have been procured for. Particularly has said Hoag caused the purchase of great quantities of coal at prices greatly in excess of the prices at which said coal could have been purchased and would have been purchased had the said Hoag made any reasonable effort or any effort whatsoever to save or conserve the money of the taxpayers."

A hearing was held before the State Civil Service Commission and thereafter two of its members, Elizabeth Quereau and J. M. Jones, ordered the removal of the defendant in error as a member of the Colorado Board of Corrections. The other member of the State Civil Service Commission, William T. Lambert, Jr., dissented therefrom. The finding of the majority of the State Civil Service Commission recites:

"June 5, 1929, this proceeding came on for hearing upon said charges, amended charges and supplemental charges in so far as demurrer had not been sustained thereto, and the said answers of respondent thereto, and petitioner and respondent, respectively, appeared in person and by counsel. The hearing continued from day to day, and time to time, and was concluded June 14, 1929. During the progress of such hearing evidence was introduced in support of said charges and in reply thereto, and thereafter reduced to writing, and this Commission, having heard the evidence so adduced, and the arguments of counsel, and having considered thereof, and being now fully advised in the premises, does find:

"That said original charges, in paragraph 2 thereof, allege that:

" '* * * Particularly has said Hoag caused the purchase of great quantities of coal at prices greatly in ex-

cess of the prices paid by other consumers and in excess of the prices at which said coal could have been purchased and would have been purchased had the said Hoag made any reasonable effort or any effort whatsoever to save or conserve the money of the taxpayers.'

"And it appears from the evidence, and this Commission so finds that said respondent, for several years last past, has been a member of the Colorado Board of Corrections, and that said Board had heretofore delegated to him the power and authority to purchase coal from time to time for the use of the Colorado State Hospital, located at Pueblo, Colorado, as its needs might require, and that pursuant to such authority, respondent did from time to time thereafter and on numerous occasions purchase coal for such purpose from the Forbush Coal Company, and from other coal producing companies, and it further appears from the evidence, and the majority of the Commission so finds, that while so acting in his official capacity as a member of said Board, and so purchasing coal for the use of said institution, the respondent made numerous purchases of coal from the said Forbush Coal Company for the use of said hospital and in practically every instance of such purchases from said company, respondent paid twenty-five cents ($0.25) per ton more for coal for the use of said hospital than was paid by him to any other company or person for coal of an equal or superior quality and adaptability for the use of said institution.

"Further, the majority of the Commission finds from the evidence that the said respondent, Frank S. Hoag, has not rendered efficient service in his capacity as member of Colorado Board of Corrections, in that it appears from the evidence that he consistently and uniformly paid to the said Forbush Coal Company for coal for the use of the Colorado State Hospital a price in excess of that paid to all others furnishing coal of an equal or superior quality and adaptability for the use of said hospital, and that said respondent could, by the exercise of

due and reasonable diligence and business judgment, have purchased said coal or coal of an equal or superior quality and adaptability at a less price than that paid to the Forbush Coal Company, and that the standards of efficient service and the good of the service would be subserved by the removal of the said Frank S. Hoag from said office as a member of the Colorado Board of Corrections.

Commissioner Lambert filed a dissenting opinion wherein he found and held, after particularizing upon the insufficiency of the evidence to warrant the ouster of defendant in error, that: "There is no evidence whatever in this record to warrant or permit any finding of the Commission that respondent had ever failed in the performance of his official duties as a member of the Board; or that he has ever failed to exercise reasonable and prudent judgment and discretion; or that he ever failed to render efficient service. On the contrary, the evidence abundantly shows that at all times he has been a faithful, intelligent and efficient public officer."

In seeking a reversal of the judgment of the district court ordering a reinstatement of defendant in error, two contentions are made: 1. That the district court was without jurisdiction to determine that the judgment of removal was void. 2. That the evidence was sufficient to sustain the order of removal.

1. The Colorado Constitution, article 12, section 13, provides: "Persons in the classified service shall hold their respective positions during efficient service and shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties. They shall be removed or disciplined only upon written charges, which may be filed by the head of a department or by any citizen of the state, for failure to comply with such standards, or for the good of the service, to be finally and promptly determined by the commission upon inquiry and after an opportunity to be

heard. No person shall be discharged for a political or a religious reason.''

It is urged that by virtue of this constitutional provision, the Civil Service Commission has exclusive power of removal; that its determination is final and cannot be reviewed by the courts. To hold that the courts have no power to review an order of removal of one under civil service or a like order of other state boards clothed with similar powers would result in the investment of such boards with arbitrary and final power of removal. A state official could be discharged without written charges, without a hearing and without proof of charges at the mere caprice or whim of the appointing board. The people of Colorado in adopting the constitutional provision above quoted most assuredly did not intend that it should be so interpreted, and the provisions thereof are not susceptible to such construction.

Undoubtedly, the Civil Service Commission has the power to adopt standards of efficient service and to remove its employees upon charges of inefficiency being filed and after a hearing, if the evidence supports the charge. Also they may remove ''for the good of the service'' if written charges are filed, a hearing is had thereon and evidence to support the same is introduced. An order of removal based upon a finding of inefficient service or ''for the good of the service'' must be supported by evidence sufficient to justify such a determination. If evidence at any such hearing is sufficient to justify the Civil Service Commission in the exercise of its discretionary power of removal, the courts are powerless to interfere with such exercise of discretion. However, where a complaint has been made that no sufficient evidence was introduced to support the charges made, the court undoubtedly has the jurisdiction and power to review such proceedings. *Civil Service Com. v. Cummings,* 83 Colo. 379, 265 Pac. 687; *Merrick v. Halsey & Co.,* 242 U. S. 568, 37 Sup. Ct. 227; *McLaughlin v. Mayor of Cambridge,* 253 Mass. 193, 148 N. E. 458; *Rash v. Allen,* 24

Del. 444, 76 Atl. 370; *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595.

2. On November 4, 1929, the district court entered its findings and decree wherein, after holding that the court had jurisdiction to review the proceedings of the State Civil Service Commission and its order of removal, it found and decreed as follows:

"* * * that there is no evidence to support the contention that the petitioner Hoag did uniformly or at all pay to the Forbush Coal Company more for coal than he paid to other persons. The court further finds that the allegation in the return and answer of the respondents as to their action in removing the petitioner from office is not sustained by the evidence; that the ground set forth for the removal of the petitioner is insufficient in law; that the Commission has exceeded its jurisdiction and abused its discretion, and has arbitrarily attempted to act herein beyond any power of lawful authority in it vested.

"It is therefore adjudged and decreed that the temporary writ heretofore issued herein shall be made permanent, and the court hereby enters judgment that the petitioner be admitted and restored to the use and enjoyment of his office to which he is entitled."

Plaintiffs in error contend that the lower court erred in its findings and decree because the evidence before the State Civil Service Commission was sufficient to justify its order of removal. In order to determine this question, it, therefore, becomes necessary for us to summarize and review the evidence thus adduced.

The record discloses that Mr. Hoag, defendant in error, as a member of the Board of Corrections, had charge of the purchase of coal from 1917 to December, 1928, for use by the Colorado State Hospital located at Pueblo; that with only a few exceptions slack coal was so purchased and used; that no order for coal at two different prices was ever given on the same day; that a record book of the Colorado State Hospital shows the amount

and grade of all coal purchased for its use and from whom purchased during the years 1921, 1922, 1923 and 1924 and beginning December 15, 1924, and to May 28, 1929, the record shows in addition the date of receipt, the cost per ton and the total cost of said coal. This record was the only evidence introduced showing the cost and amount of coal sold to, and received by, the hospital. Beginning January, 1925, and continuing until the date of the last entry therein, May 28, 1929, the record book shows that coal was purchased from various Pueblo dealers, jobbers and others. Among these were the McGovern Coal Company, Empire Coal Mining Company, Forbush Fuel and Ice Company, Wellington Mining Company, Mountain Ice and Fuel Company, Jones Coal Company, H. S. Yeager, Thomas and Brown Coal Company and Canon Reliance Fuel Company. McGovern, Wellington, Mountain Ice and Fuel and Forbush furnished a large percentage and most of the coal purchased. This record book and the evidence fail to show the purchase date of any coal or the retail or wholesale market price of similar coal on said purchase dates. During this period the price per ton of slack coal of different grades and values in carload lots furnished the hospital fluctuated between $1.00 and $2.50. In only a very few instances was coal sold for less than $1.45. There were numerous instances from time to time when Forbush received more for coal than was received by others furnishing coal on the same delivery date. Likewise there were numerous other instances when others received more for coal furnished than Forbush on the same delivery date. Also between dealers, other than Forbush, there was a variation in price of coal delivered on the same day. Such last mentioned variations also continued after Hoag ceased to purchase coal for the hospital in December, 1928. There is no showing made whatever of variations in price on the date of purchase.

Witnesses for the C. F. & I. Company and the Victor American Fuel Company, producers, were of the opinion

that coal could have been purchased directly from their companies at less than from the dealer or jobber. Forbush testified that every dealer bought 99 per cent of his lump and nut coal in Pueblo "on the open market, because he can always buy for less than the ruling price. In nine cases out of ten, we can buy the coal some place else cheaper than from the C. F. & I. Company and the Victor American Fuel Company."

A. H. McCoy, a Pueblo coal dealer, testified that he had sold coal to defendant in error and that "he [Hoag] has always tried to buy at a very, very low price. He would always have my price beat a little. I usually had to beat his price. I am familiar with the sale and purchase of coal generally and the margins upon which it is bought and sold. From my experience with Hoag, I would consider him a close buyer." To the same effect was the testimony of both Forbush and Yeager, Pueblo coal dealers. All purchases of coal made by defendant in error had the approval of the Board of Corrections.

The evidence further shows that Pueblo is the dumping ground for slack coal of all grades; that slack coal is a by-product of the coal mining industry; that the supply of slack increases with the increased amount of tonnage of nut and lump coal; that the price of slack coal at Pueblo is exceedingly variable from day to day and on the same day. Frequently it can be purchased from a dealer or jobber for less than from the producer. This is occasioned by the excess or diminished supply and demand; the necessity to move slack to obtain cars for shipments of other grades of coal and to save demurrage charges and other economic reasons. Of the local dealers in Pueblo, Forbush had the largest business and most frequently had the largest supply of slack on hand for sale and delivery.

There was no testimony supporting the charge that "he [defendant in error] used his official position as a member of the Board of Corrections to further and promote his own personal, private ends and purposes

* * *,'' and the Commission failed to find that Hoag's purchases from Forbush were made ''to further and promote his own personal, private ends and purposes.''

For convenience in discussion, we will again quote the specific portion of the charge upon which the Civil Service Commission based its judgment of ouster:

''Particularly has said Hoag caused the purchase of great quantities of coal at prices greatly in excess of the prices paid by other consumers and in excess of the prices at which said coal could have been purchased and would have been purchased had the said Hoag made any reasonable effort or any effort whatsoever to save or conserve the money of the taxpayers.''

In their attempt to justify this judgment of ouster, the Civil Service Commission found:

(a) ''Respondent made numerous purchases of coal from the said Forbush Coal Company for the use of said hospital, and in practically every instance of such purchases from said company, respondent paid twenty-five cents ($0.25) per ton more for coal for the use of said hospital than was paid by him to any other company or person * * *.

(b) ''That he consistently and uniformly paid to the said Forbush Coal Company, for coal for the use of the Colorado State Hospital, a price in excess of that paid to all others furnishing coal * * *.

(c) ''That said respondent could, by the exercise of due and reasonable diligence and business judgment, have purchased said coal * * * at a less price than that paid to the Forbush Coal Company, * * *.''

(a) The record shows that Forbush frequently received more for coal than was received by other dealers who delivered coal on the same date and also that on numerous other occasions Forbush received less for coal than other dealers on the same delivery date, and also that some dealers, other than Forbush, frequently received more than others for coal delivered on the same date. There is an entire absence of testimony or evidence

as to the date of purchase of the various shipments of coal received by the hospital. There is no proof that on the date orders for coal were given either to Forbush or others that purchases were made at different prices. On this point the record book is the only evidence and it merely shows the dates coal was received by the hospital and the prices paid therefor.

The fact that two shipments of coal were received by the hospital on the same day and that different prices were paid therefor, does not prove or tend to prove that these purchases were made on the same day or that coal was or could have been bought on the date of purchase at a less price than was actually paid therefor. So far as the record discloses, the shipments of coal received upon the same date may have been ordered at different times, days or weeks previous to the day of delivery. The record book of the State Hospital discloses that during 1927 and 1928 there were 31 times when coal purchased from Forbush was received on the same date as coal purchased from others. On 16 of these occasions, Forbush received less for such coal than was received by others and on 15 thereof he received more than was received by others. Frequently there were instances during the same period when Forbush received the same price as other dealers for shipments received on the same day. This evidence is wholly insufficient to justify the finding of the Civil Service Commission that in practically every instance Forbush received 25 cents per ton more than was paid to others.

(b) The finding of the Civil Service Commission that Forbush was "consistently and uniformly paid more for coal than others received is not supported by the evidence for the reasons stated hereinabove."

(c) Testimony of McCoy, Forbush and Yeager was all to the effect that Hoag was a man of good business judgment, highly efficient, a careful buyer, always sought to buy coal at the lowest price, and that before purchases were made he diligently investigated the market to deter-

mine where coal could be purchased at the lowest price. There was no evidence from which it could be determined and a finding made that on the same day that Forbush orders were given, coal was or could have been purchased for a less amount. Instead of the record showing that Hoag failed to use due and reasonable diligence and business judgment it does show that he used the utmost care in coal purchases. Therefore, the finding of the Commission that Hoag "could by exercise of due and reasonable diligence and business judgment" have purchased coal at a less price than that paid to Forbush and that Hoag was inefficient and should be removed "for the good of the service" was purely speculative and entirely unjustified. Such findings and order of removal were the result of an abuse of discretion rather than the exercise of sound judgment.

A public official is presumed to act honestly, faithfully and efficiently and the burden of proving that he has failed to so act is upon the one who seeks to oust him. Here this burden was not maintained because no evidence was introduced to prove the charges made. The judgment of ouster based upon findings wholly unsupported by the evidence cannot be upheld by this court. To approve an order of removal upon such evidence would deny the right of one under Civil Service to that protection which is guaranteed by the Constitution, article 12, section 13. "Persons in the classified service shall hold their respective positions during efficient service * * *," and clothe the Civil Service Commission with arbitrary powers which the Constitution of this state discloses it shall not have. The findings and order of the dissenting member of the State Civil Service Commission should have been the order of the Commission. The order of the district court reinstating Hoag to his position as a member of the Board of Corrections was within its jurisdiction and the only order that could have been entered in justice to the defendant in error.

Judgment affirmed.

Mr. Chief Justice Whitford and Mr. Justice Camp-
bell not participating.