No. 20,052.

DOROTHY LEE DAVIS *v.* F. H. SALTER, ET AL., AS CAREER SERVICE BOARD OF THE CITY AND COUNTY OF DENVER.

(370 P. [2d] 458)

Decided March 12, 1962.   Rehearing denied April 23, 1962.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for plaintiff in error.

Mr. ROBERT S. WHAM, City Attorney, Mr. BRIAN H. GORAL, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as plaintiff and to defendant in error as the Career Service Board.

January 3, 1957, plaintiff applied to the City and County of Denver for employment by filing an applica-

tion with the Career Service Board of said city. The application was on a printed form, one of the questions appearing thereon being the following:

"Have you ever been arrested for any law violation other than Minor Traffic Violations?"

In filling out the application plaintiff answered this question in the negative by placing a check mark in the square opposite the word "No." Immediately above the signature of plaintiff on the application appears the following printed statement:

" * * * I hereby certify that the foregoing statements are to the best of my knowledge true and correct and I agree that any misstatement or omission as to material fact will constitute grounds for unfavorable consideration of my application or dismissal from the employ of the City and County of Denver."

Following submission of her application, and on June 10, 1957, plaintiff was employed as a keypunch operator by the City and County of Denver. The last day of her continuous employment was May 8, 1958, and on the 28th of May of that year she resigned. The cause of her resignation was that between the dates mentioned she became the mother of a child, it appearing that under the rules of the Career Service Board an employee was not entitled to maternity leave. June 19, 1958, plaintiff was re-employed and re-assigned to the work that she had done theretofore.

In April, 1961, the data processing division of the City and County of Denver learned that plaintiff had made a false answer to the above-quoted question in her application for employment, in that she had been arrested on December 4, 1954, and again on January 7, 1955, for violation of ordinances of the City and County of Denver; that as a result of the December 4th arrest she was assessed a $300.00 fine and sentenced to ninety days in jail, which fine and sentence were conditionally suspended; that under another section of said ordinances plaintiff was assessed a fine of $25.00 which she paid. It

further appears that on October 8, 1955, plaintiff had again been placed under arrest but no disposition of the matter appears of record.

Following receipt of this information plaintiff was dismissed from her position. The reason assigned therefor was, "Falsification of Records, Including Falsification of Application Papers for Employment in the Career Service." Plaintiff registered a complaint against this dismissal and the matter was heard before the Career Service Board on May 22, 1961. The Board sustained the order of dismissal and entered findings that she had made a false statement relative to arrests when in fact she had a record of arrests which were not discovered until shortly before her dismissal and that plaintiff fully realized the falsity of said statements and admitted that her statement concerning the past arrests was untrue.

In appropriate proceedings before the district court the action of the Career Service Board was sustained. At the original hearing before the Board it was stipulated that plaintiff was dismissed only because of the falsification of her original application. It was further stipulated that during the entire period of her employment she had a good work record.

■ In disposing of the controlling question thus presented, the district court in its findings and judgment included the following:

" * * * The only question is whether the Career Service Board abused its discretion in following a rule which is admittedly a lawful one and which is part of the employment contract between the City and its employees; and whether when such rule is found to have been violated and the City acts promptly to enforce the rule by dismissal, the City nevertheless must retain the employee who has committed a fraud merely because the employee's service has been satisfactory for a period of approximately five years.

"Plaintiff admits the rule is a lawful one. The plaintiff contends that the fact falsified was not found by the

Board to be such that she would not have been employed in the first place, if it had been known at that time. It seems clear that the action of dismissal makes it obvious that had the facts falsified been truly stated at the time the application was made, the plaintiff would not have been hired. If employees in a city are permitted to enter into a contract upon false statements and the city is required to retain them in its employ when the fraud is discovered, it appears clear that the rule will have no meaning and this term of the contract of employment will have no effect.

"For the reasons stated, it is believed that the action of the Board should be sustained and it is therefore ordered that plaintiff's complaint be dismissed."

Under the facts and circumstances disclosed by the record in this case we hold that there was no abuse of discretion on the part of the Career Service Board and the judgment of the trial court accordingly is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ dissent.

MR. JUSTICE FRANTZ dissenting:

1. If the record before use reveals the full story of Mrs. Davis' dismissal (an assumption I must make), then I fear that her summary discharge by the director of the "data processing office," subsequently affirmed by the Career Service Board, was punitive in nature and not a needful administrative act in the public interest. To punish is not the function of either the director or the Board. Such proceedings are held to be remedial rather than penal. *In re Mason,* 147 Minn. 383, 181 N.W. 570; *Baird v. School District,* 41 Wyo. 451, 287 Pac. 308. See *State Civil Service v. Hoag,* 88 Colo. 169, 293 Pac. 338.

Nowhere in this record, whether in the administrative proceedings or in the hearing before the court, was there evidence submitted showing that the application with the false statements had brought harm upon or detriment to the Career Service, the city, or the public. And,

of course, neither the Board nor the Court found such harm or detriment to have occurred.

That a very narrow issue was involved — one which under the circumstances colors the action of the administrative authorities as being punitive—appears from the notice of dismissal dated April 29, 1961. She was advised:

"It has come to my attention that your Application for Employment does not indicate a *series of arrests* that took place between December 4th, 1954, and October 8th, 1955, therefore in accordance with Career Service Rule 10-72B-7, I am discharging you effective at close of business April 28th, 1961, *for the falsification of application papers* for employment in the Career Service." (Emphasis supplied.)

This dismissal by the director was appealed to the Board and there the narrow issue is again pointedly delineated by the Assistant City Attorney:

" * * * I have no objection if the Board wants to review the entire personnel file and take administrative knowledge of it, but I do want to make clear with respect to the last part of the question, that we maintain that *there's no relationship between the good work record of Mrs. Davis and the falsification of her original application* as it relates to City's Exhibit 2, *her arrest record.* And that Mrs. Davis is not being dismissed because she is not a good employee." (Emphasis supplied.)

That she had a good work record and that she was a good employee, matters indicating advantage and benefit to the service, to the city and to the public, were of no concern. A five-year-old false statement, per se, without more, suffices to sustain the discharge. Such was the position of director and Board, and in taking such position the administrative authorities assumed a retributive role rather than considering the public interest. The statement having appeared in her original application, it was investigated, but the results apparently were negative.

2. In the letter of dismissal, quoted above, reference is

made to a "series of arrests" as the basis of falsification. The Assistant City Attorney in his statment of the issue, also quoted above, referred to "her arrest record." In its "Findings and Order" the Board found "that Mrs. Davis did have a *record of arrests* preceding the date of application for employment" and that, in this respect, she made a false statement. The trial court, in sustaining the Board, notes the "false statement relative to arrests."

Mrs. Davis had given a negative answer to the question, "Have you ever been arrested for any *law violation* other than minor traffic violation?" (Emphasis supplied.) Did she falsify the answer so as to warrant a discharge based upon a "series of arrests" falsely said not to have taken place? For here was the ground of discharge! Let use examine the record. She was arrested once, tried for alleged violation of ordinances, found guilty and fined. She was arrested on January 7, 1955, for *investigation* and released two days later. She was arrested on December 8, 1955, for *investigation* and discharged. She was arrested for *investigation* on December 4, 1954, and "checked out." She was rearrested in connection with this latter matter, and the rearrest was the one time a violation was involved, as noted above.

Only one arrest involving law violation appears; the other arrests for investigation do not come within the terms of the question to which a negative answer was given. Since every determination — director's summary discharge, affirmance by the Board and later by the court — literally speaks of "arrests," it is apparent that the cumulative effect of arrests probably prompted the successive decisions.

Where the probability is that the number of arrests in their cumulation produced the result rather than the one arrest, we should reverse. The certainty here is that there is some uncertainty as to the basis for these decisions. "Imperfection of the determination of an administrative board which leaves no avenue for the Court to take in reviewing the matter and which furnishes no

basis upon which to resolve whether the board may or may not be sustained, requires reversal." *Board v. Finnigan,* 139 Colo. 92, 336 P. (2d) 98; *Commissioners v. Salardino,* 136 Colo. 421, 318 P. (2d) 596; *Geer v. Presto,* 135 Colo. 536, 313 P. (2d) 980.

3. The applicable rule or regulation promulgated by the Board provides in part:

"Cause for dismissal shall include acts involving unsatisfactory performance or acts or conduct prejudicial to the public interest. * * * Acts or conduct prejudicial to the public interest include * * * falsification of records, including falsification of application papers for employment in the Career Service. * * *

"In determining whether a specific act or offense by an employee is of such a degree of seriousness as to warrant dismissal, an appointing authority *shall be guided by*:

"(a) Standards prevailing in private employment for a like class of work;

"(b) Nature and extent of detriment to the performance of the functions of the agency and damage to the public interest." (Emphasis supplied.)

These mandatory guides furnish criteria for determining whether amotion from office is warranted. The record is barren of evidence indicating that dismissal was justified in the light of these guides. Indeed, the Board was advised that almost universally the passage of time coupled with satisfactory service absolves falsification of statement in an application; that this is the rule in arbitration cases, and affords a standard of private employment which should have been a guide in this case. *In re Niagara Frontier Transit System, Inc.,* 26 Labor Arbitration Reports 575; *In re Bell Aircraft Corp.,* 17 Labor Arbitration Rep. 230.

Director, Board and trial court operated in a vacuum insofar as the record discloses the "nature and extent of detriment to the performance of the functions of the agency and damage to the public interest." Absent any

evidence regarding these matters, it should be presumed that there was neither such detriment nor such damage.

4. On January 3, 1957, Mrs. Davis applied for employment with Denver, and filled out the form in which she made the false statement regarding the one arrest. On June 10, 1957, she was employed as a keypunch operator, and remained so employed until her resignation dated May 28, 1958. Thereafter she wrote the following letter:

"Dear Sir: I was employed by the City and County of Denver as an I.B.M. Keypunch operator from June 10, 1957, to the latter part of May 1958. I resigned the latter part of May, 1958, because my baby girl was born May 16, 1958. Will you please place my name on the *reemployment list*. Sincerely yours, Dorothy Lee Davis." (Emphasis supplied.)

She was reemployed the middle of June, 1958, and continued in such status until her discharge. As is customary, application for reemployment does not require the formality of the original request for employment. There was no misrepresentation in the letter seeking reemployment.

The great weight of authority holds that a public employee cannot be removed or discharged from his employment because of his misconduct during a former employment. *In re Fudula*, 297 Pa. 364, 147 Atl. 67. "No rule is better settled under our democratic theory than this; when one is * * * reappointed to an office or position he is not subject to removal for offenses previously committed." *Rosenfelder v. Huttoe*, 156 Fla. 682, 24 So. (2d) 108. See *Speed v. Common Council of Detroit*, 98 Mich. 360, 57 N.W. 406, 22 L.R.A. 842, 39 Am. S.R. 555.

I have enumerated reasons for holding that these proceedings should be reversed. Each and all, I respectfully say, are sufficient. So maintaining, I must dissent.

Mr. Justice Sutton concurs in this dissent.