411 P.2d 778 (1966)
Douglas K. CAIN, Plaintiff in Error,
v.
CIVIL SERVICE COMMISSION of the CITY AND COUNTY OF DENVER, Defendant in Error.
No. 21731.
Supreme Court of Colorado, En Banc.
March 7, 1966.
*779 William R. Koger, Denver, for plaintiff in error.
Max P. Zall, City Atty., Brian H. Goral, Asst. City Atty., Denver, for defendant in error.
MOORE, Justice.
This case involves a review of proceedings originally commenced by the entry of an order by the Chief of Police of the City and County of Denver. The order was served on plaintiff in error, Cain, on February 28, 1963, to the effect that he was "discharged from the Classified Service," of the city in which he had theretofore been employed as a police officer. Attached to the instrument served upon him was a document entitled "Notice of Intention to Initiate Disciplinary Action and Specification of Charges."
It was alleged in the statement of the charges that on or about the 21st and 22nd of February, 1963, Cain, who at that time was a police officer, repressed, concealed and distorted facts concerning important happenings and other information of concern to the department. The information thus concealed and distorted consisted in part of his knowledge that he previously had stolen merchandise (a typewriter) in his possession, his disposition of the stolen merchandise, and the source and manner in which he acquired the typewriter. He was further charged with making a false report orally to his commanding officer and to the commanding officer of the Internal Affairs Bureau of the Denver Police Department concerning his participation in a transaction involving merchandise which he had reason to believe was stolen property.
It was further alleged that Cain did, on the 22nd day of February, 1963, fail to make to his superior officer a full and complete disclosure pertaining to the performance of his official duties. As a result of these specifications Cain was charged with violations of the Rules and Duty Manual of the Denver Police Department, to-wit, Section 7.1 pertaining to the duty of all officers to report to the department crimes, important happenings, and other information of concern that come to their attention. This section also requires that an officer shall not repress, conceal or distort the facts of any such incident, and further states that it shall be deemed neglect of duty to withhold such information. Rules Section 7.4 requires all members of the department to report promptly, in the manner prescribed by reporting procedure, and also states that they shall not make a false report, either orally or in writing. Section 8.9 makes it a violation of the Rules and Regulations to wilfully depart from the truth, either in giving testimony or in connection with any official duties.
Applicable sections of the charter of the city were specified, in furtherance of which the Rules and Duty Manual of the Denver Police Department were adopted by those with authority in the premises. On March 4, 1963, the Manager of Safety and Excise of the city signed an order entitled "Departmental Order of Disciplinary Action" by which Cain was notified that he was "hereby discharged from the Classified Service of the City and County of Denver." He thereupon filed his petition before the Civil Service Commission of the city, the prayer of which was as follows:
"WHEREFORE, appellant requests a full review of said Order by the Civil Service Commission, reinstatement in the classified service of the Police Department of the City and County of Denver as a Patrolman, First Grade, with full reimbursement of pay and other benefits accruing while under suspension, and for such further relief *780 as the Commission may find fit and proper."
As provided by the city charter the Civil Service Commission held hearings which were concluded on December 5, 1963, in the course of which eleven witnesses were called, including Cain himself. On December 24, 1963, the Commission ruled that:
"* * * the Chief of Police and Manager of Safety should be sustained in their decision heretofore entered. * * *"
Upon review in the district court, the action of the Civil Service Commission was upheld.
The decision of the Commission, which the district court affirmed, contained the following pertinent language:
"3. That the respondent, Douglas K. Cain, did wilfully and with full knowledge fail and refuse to truthfully respond to interrogation by his superior officers concerning his connection, if any, with a typewriter.
* * * * * *
"* * * The Commission believes that the respondent, Douglas Cain, refused to tell the truth to superior officers until his falsehoods were continually pointed out to him during a polygraph examination; but, more important, the Commission feels that the respondent, Douglas Cain, did not tell the truth when testifying under oath before this Commission and we make specific reference to Respondent Cain's testimony that he had never used the subject typewriter while in his possession and that, in fact, he had never had the same out of its case. The Commission must contrast this sworn testimony with the sworn testimony of respondent's wife, Mrs. Cain, who was excluded during her husband's testimony but who later testified regarding her knowledge of the typewriter that she first observed the same opened and on a card table in respondent's apartment prior to their marriage."
Cain first denied any knowledge of the typewriter involved in this proceeding, when questioned with regard thereto, but finally retracted this denial and admitted trading it to the witness Naiman as part payment on the purchase of a refrigerator. Counsel for Cain urges that there was a failure in the evidence to establish that the typewriter which Cain traded for the refrigerator was the identical machine taken in the burglary of a business establishment on August 21, 1959. Cain, again belatedly, testified that he obtained the machine about three years prior to the date of the hearing (December, 1963) from a personal friend, who subsequently died, as security for a loan of $10.00. We have read the entire record and find ample testimony to support the conclusion that the typewriter traded by Cain was the one taken in the burglary.
While it is true that the Commission did not find Cain was in possession of a stolen typewriter, it is perfectly obvious that the Commission was simply holding that it was not necessary to determine that the typewriter he had in his possession was in fact stolen in order to hold and find that he did in fact lie to his superior officers and commit breaches of those rules and regulations for which he was charged. In the case of Davis v. Salter, 149 Colo. 476, 370 P.2d 458, this court held that an employee may be discharged from Career Service for falsifying an application for city employment.
Cain was also charged by the Chief of Police with conduct unbecoming an officer and a gentleman, and the Commission found that this charge was true. In the case of Hawkins v. Hunt, 113 Colo. 468, 160 P.2d 357, this court had occasion to review a similar charge filed against an Officer Hunt who contended that the charge was so ambiguous and uncertain as to amount in practice to a nullity. We quote from that case the following pertinent language:
"* * * It is true that the rules are not so explicit as to specifically advise one of everything he may do and still be classified as an officer and a gentleman and those things he may not do without *781 loss of that classification. However, it would tax one's credulity to assume for a moment that one who possessed sufficient intelligence to pass the civil service examination for the police department did not understand these rules and regulations sufficiently to realize that the securing or insuring of his promotion under civil service for a financial consideration violated one or both of the rules and regulations involved in this section. As applied to the facts in this case, the rules are certainly sufficiently specific and definite, and plaintiff should not be heard to say that he was not, as an officer and gentleman, conscious of the fact that his conduct was reprehensible.
* * * * * *
"* * * The disciplinary action may have more severe than would be imposed by another, but certainly it was within the Manager's power and it became his duty to determine what was proper disciplinary action, and in this action the plaintiff was not prejudiced."
It is argued that Cain was denied due process of law in that he was discharged by executive order of the Chief of Police and the Manager of Safety without opportunity to be heard. The procedure followed was pursuant to Section C5. 73-2 (1) of the charter of the City and County of Denver where we find the following:
"The chief of police and the chief of the fire department shall, within their respective commands, initiate disciplinary action by a written command, ordering the specific disciplinary action, which written command shall be submitted to the Manager of Safety and Excise for approval, together with a written specification of charges and a written report, setting forth, in summary, the evidence of and reasons for such charges, * * *."
The sections following the above charter provisions establish the procedure for an appeal and review before the Civil Service Commission to be followed by the officer affected by the disciplinary order.
Counsel for Cain contends that due process of law requires that a full scale hearing is necessary before any valid order of suspension or discharge can be issued. We hold that the charter provisions establish an orderly procedure for hearing and reviewing an order of suspension or discharge from the classified service. If the suspension or discharge is nullified on review, reinstatement without loss of pay would follow. It appears to be Cain's contention that he should be retained on the payroll of the City and County of Denver as a police officer until such time as a hearing has been completed and a final determination made before he is removed from the payroll of the police department. Pueblo v. Grady, 131 Colo. 313, 281 P.2d 513, and Bratton v. Dice, 93 Colo. 593, 27 P.2d 1028, which are relied upon by Cain, are easily distinguishable from the instant case, upon the facts, and are not applicable.
Procedures comparable to those followed in the instant case were upheld in the following cases. Ewing v. Mytinger and Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088; McKeithen v. City of Stamford, 149 Conn. 619, 183 A.2d 280; LaBonte v. City of Berlin, 85 N.H. 89, 154 A. 89; Bodmer v. Police Mutual Aid Association, 94 Utah 450, 78 P.2d 640.
Other points argued by counsel for Cain hinge upon the proposition that the charter of the City and County of Denver purports to delegate arbitrary power to the Chief of Police in the establishment of rules of conduct, for a violation of which the offender may suffer suspension or discharge in violation of the constitutional provision relating to separation of powers of government, and in violation of the home rule amendment (Article XX, Sec. 3) to the Constitution of the State of Colorado. We find no merit in these contentions. It is sufficient to say that the Chief of Police is the charter officer designated by the people with authority to promulgate and adopt the internal rules and regulations governing the *782 daily affairs and activities of the members of the police department.
In Fallon v. Nicholson, 136 Colo. 238, 316 P.2d 1054, a question arose concerning the Career Service Board's authority to adopt rules and regulations governing the conduct of employees covered by Career Service. The Board's authority to adopt rules and regulations stemmed from the people and was upheld by the court, just as the Chief of Police in the instant case has been given authority under the charter to promulgate rules and regulations governing operational affairs of the police department of the city.
The judgment is affirmed.
McWILLIAMS and PRINGLE, JJ., not participating.